# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 17,2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0331-MR
2019-SC-0333-MR

RONALD TRIPLETT                                           APPELLANT

V.
ON APPEAL FROM MONTGOMERY CIRCUIT COURT
HONORABLE WILLIAM EVANS LANE, JUDGE
NOS. 16-CR-00164 AND 17-CR-00116

COMMONWEALTH OF KENTUCKY                         APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Ronald Triplett entered a conditional guilty plea to five indicted charges: two counts of first-degree rape and one count each of first-degree sodomy, kidnapping, and first-degree criminal possession of a forged instrument. A jury, empaneled to recommend his sentence, recommended Triplett serve eighty-five (85) years in prison. The circuit court ultimately sentenced Triplett to serve seventy (70) years in accordance with Kentucky law.[1]

Triplett raises four issues on appeal. He claims the circuit court erred by: 1) denying his motion to suppress; 2) denying his motion to withdraw his guilty plea; 3) allowing the jury to hear unduly prejudicial details about his

---

[1] The circuit court initially sentenced Triplett to eighty-five years in prison and the length of his sentence was part of Triplett's appeal. However, shortly after Triplett filed his appellate brief, the circuit court entered an amended judgment sentencing Triplett to seventy years in prison, the maximum allowed by Kentucky Revised Statute (KRS) 532.110, rendering the issue moot. With leave of this Court, the Commonwealth supplemented the record with the amended judgment.

prior offenses; and 4) failing to instruct the jury that his sentences may run partially consecutively and partially concurrently. Upon review, we affirm the Montgomery Circuit Court's amended judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2019, Triplett entered a conditional guilty plea in Montgomery Circuit Court to all charges contained in 16-CR-00164 (one count each of first-degree rape, first-degree sodomy, kidnapping, and first-degree criminal possession of a forged instrument) and 17-CR-00116 (one count first-degree rape), reserving the right to appeal the circuit court's pretrial denial of his motion to suppress evidence. The Commonwealth and Triplett requested jury sentencing. The jury heard the following evidence.

In late July 2016, J.B. was walking along a Mount Sterling, Kentucky street. A man, later identified as Ronald Triplett, driving a black Cadillac Escalade, pulled up beside her and asked if she needed a ride. Triplett told J.B. he would pay her to get inside his vehicle. J.B. declined. Triplett drove away, and J.B. continued to walk. Triplett later walked up behind her, put a hand over her mouth, and forcibly took her through a wooded area back to the Escalade.

Triplett drove J.B. to a building and forced her up a flight of stairs to a door that had multiple locks on both the inside and outside. The apartment inside contained a bed and J.B. saw a gun in the apartment. Triplett raped J.B. vaginally and anally. He forced her to perform oral sex on him and he also performed oral sex on her. Afterward, Triplett dropped J.B. off in the area where she had been walking. J.B. called 911 and was able to give a partial

2

license plate number, described her assailant, and when an officer arrived, showed him the building in which Triplett raped and sodomized her. The officer transported J.B. to the local hospital and the medical staff examined her for sexual assault.

The police determined Triplett was associated with the building and discovered he owned a black Escalade. The partial license plate number given by J.B. matched the first four numbers of Triplett's vehicle. When the police executed a search warrant for the building, they found an apartment inside and, as described by J.B., the door had multiple latches and locks on both sides. The police discovered surveillance equipment inside. The police also found a fake but realistic looking handgun, a hidden camera, handcuffs, ankle shackles, a strap-on dildo, 15 counterfeit $100 bills, and latex gloves. The police contacted the Bureau of Alcohol, Tobacco, and Firearms (ATF) and requested its electronic crime branch examine the electronic equipment found in the building. The police sought an arrest warrant for Triplett and an officer was dispatched to Triplett's home.

Mrs. Triplett told the police that her husband had been gone for about three days and she had not seen him. She said Triplett told her he needed to come up with some money for an attorney because after picking up a girl and having sex with her, the girl said she would tell authorities he raped her if he did not give her money. The police tracked Triplett to a hotel room in Livonia, Michigan. Livonia police officers arrested Triplett in the hotel parking lot. The officers also took possession of the electronic equipment, computers, jump

3

drives, videos, and discs in Triplett's hotel room.[2]  Kentucky authorities obtained a search warrant and retrieved the items from the Michigan authorities upon extraditing Triplett back to Kentucky.

One of the items seized from the hotel room was a video of the sexual assault of J.B.  Portions of that video were later shown to the jury.

After Triplett was returned to Kentucky, the police interviewed him. Triplett admitted he had engaged in sexual acts with J.B. but maintained the acts were consensual; he declined to elaborate.  Triplett also disclosed details about his prior criminal history.  The audio-taped interview was played for the jury.

Besides the video of J.B.'s sexual assault, the ATF officers discovered another video that had been made in the same building.  The video showed Triplett having sex with an unconscious woman with a distinctive tattoo.  The police were eventually able to identify the woman as S.E.  When S.E. was shown the video, she confirmed she was the woman in the video, but she had no recollection of what had occurred when Triplett raped her.  Discussing that time period, S.E. said she woke up the next morning behind a grocery store and had pain and blood in her groin area but did not know what had happened.  A portion of the video depicting S.E.'s sexual assault was played for the jury.

J.B. and S.E. read victim impact statements to the jury.  Triplett testified in his own defense, and his wife also testified on his behalf.

---

[2] These items were removed without a warrant.  They were stored in the Livonia Police Department's evidence room.

The jury recommended Triplett serve twenty years for the rape of S.E.; twenty years for the rape of J.B.; twenty years for the sodomy of J.B.; twenty years for the kidnapping of J.B.; and five years for the criminal possession of a forged instrument. The jury further recommended that all sentences run consecutively to each other for a total prison sentence of eighty-five years.

After the sentencing recommendation but prior to final sentencing, Triplett moved to withdraw his guilty plea. The circuit court conducted an evidentiary hearing and then denied the motion. The circuit court imposed the jury's recommended sentence of eighty-five years, but subsequently amended Triplett's sentence to seventy years in prison.

Additional facts are presented below as necessary.

## ANALYSIS

### I. The Circuit Court Did Not Err by Denying Triplett's Motion to Suppress Evidence.

Triplett moved the circuit court to suppress all evidence found in the Livonia, Michigan hotel room. Det. Holznagle, a detective with the Livonia Police Department, testified at the suppression hearing. He recounted receiving a communication from the Montgomery County, Kentucky Sheriff's Office that Triplett was wanted on charges of rape, sodomy, and kidnapping, and that Triplett was believed to be in Livonia, Michigan and driving a black Escalade for which the license plate number was provided. After 11:30 p.m. on August 3, 2016, a Livonia officer located the Escalade in the parking lot of a hotel; other officers soon arrived. Officers spoke with the front desk clerk and learned Triplett's room number. At some point, Det. Holznagle contacted the hotel to verify Triplett had rented a room there for the evening; the clerk

6

informed him that Triplett checked in on August 3 and was due to check out on August 4.

While the officers were standing in the parking lot, about ten feet away from Triplett's room, Triplett approached the officers. The officers confirmed Triplett's identity and arrested him around midnight. Det. Holznagle testified that while being arrested, Triplett expressed with a sense of urgency that he had belongings in the hotel room, knowing he was going to be arrested and sent back to Kentucky. Det. Holznagle was under the impression, given his experience with others and given his own attitude for protecting personal property, that Triplett did not want the belongings left unattended; Holznagle knew the local jail would not allow Triplett to take his personal belongings to be booked with him.

Additionally, once the hotel clerk learned the reason Triplett was being placed under arrest, the clerk informed an officer that the hotel wanted Triplett evicted. The officers entered the room soon thereafter.

Det. Holznagle testified that the Livonia Police Department has a good relationship with the hotel, arrests at the hotel are not uncommon, and it is a common procedure for the hotel to request the Livonia Police Department to evict an individual. The officers followed usual hotel guest eviction procedure, gaining access to the room through the clerk's assistance, although he could not recall if the clerk let the officers in Triplett's room or provided a key to the officers.

The officers took possession of Triplett's belongings and inventoried them. As customary and in accordance with office policy, the inventoried items

6

were photographed, a step taken to counter an evicted guest's future claims of property damage due to securing the property. Triplett's non-monetary value items, such as his clothes and suitcases, were placed in his Escalade which was stored in the police department's parking lot. Triplett's monetary value items, like computers, cell phones and perishable items, had an evidence tag placed on them and were stored in the police department's temperature-controlled evidence room for safekeeping, a measure against civil liability for leaving an arrestee's monetary value items in a hotel room.

Det. Holznagle testified that if the police did not secure Triplett's belongings, the hotel could have stored Triplett's belongings under the front desk for some unknown period of time, the hotel may or may not have attempted to find the owner, and the items could have been damaged, but since Triplett was arrested by the Livonia police at the hotel, the officers exercised due care and caution to avoid civil liability. None of the items were searched by the Livonia police. Det. Holznagle testified that the Livonia officers were unaware of the items in Triplett's room and had no knowledge of any evidence which may have been inside the room. Triplett did not testify at the suppression hearing.

The circuit court denied the suppression motion and concluded the warrantless seizure[3] of Triplett's property from the hotel room, falling within the proffered exceptions of consent or inventory, was reasonable and did not

---

[3] The circuit court noted that the electronics and expensive items were not searched by the Livonia officers and Kentucky officers did not search the electronics until after the procurement of a search warrant.

impinge improperly on Triplett's expectation of privacy especially in light of Triplett's concern about his property.

Triplett contends that the Michigan police violated his reasonable expectation of privacy when they entered the hotel room, performed an inventory search, and seized his property without a warrant. Triplett challenges both the circuit court's findings of facts and conclusions of law.

When reviewing a ruling on a suppression motion, we generally employ a two-step process. First, findings of fact are reviewed and will not be set aside unless they are clearly erroneous. Kentucky Rule of Civil Procedure (CR) 52.01; *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015). Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Commonwealth v. Deloney*, 20 S.W.3d 471, 473 (Ky. 2000). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). Due regard is given to the opportunity of the circuit court to judge the credibility of the testifying officer and to assess the reasonableness of the officer's inferences. *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002) ("The *Ornelas*[4] court recognized that police may draw inferences of illegal activity from facts that may appear innocent to a lay person and that a reviewing court should give due weight to the assessment by the trial court of the credibility of the officer and the reasonableness of the inferences.").

---

[4] *Ornelas v. United States*, 517 U.S. 690 (1996).

8

Second, the circuit court's application of the law to the facts is reviewed de novo. *Simpson*, 474 S.W.3d at 547.

Here, the circuit court's finding of fact stated:

> The motel wanted [Triplett] evicted and [Triplett] wanted his computer and other items removed from the room so they weren't lost. . . . It is clear from the hearing that [Triplett] did not want the items left and he had no one available to get the items within a reasonable time and [at] that time the items were removed from the room and inventoried.

Triplett argues that these findings of fact are not supported by the evidence and are clearly erroneous. He argues particularly that it is clear from the testimony that he did not ask the police to enter his hotel room and gather his belongings, that he did not express concern about his items being lost, and that there is no mention of not having anyone available to retrieve his belongings. Triplett also complains that the circuit court erroneously relied on Det. Holznagle's conjecture and sheer speculation to determine that Triplett wanted the police to collect his belongings.

Consent is a question of fact to be determined from all the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (addressing what the prosecution must prove to demonstrate that a consent was "voluntarily" given and concluding voluntariness of consent is a question of fact to be determined from all the circumstances). We note that the only testimony presented during the suppression hearing describing the Michigan officers' encounter with Triplett and the subsequent seizure of his belongings was Det. Holznagle's. Although Triplett suggests otherwise, an officer's inferences based on every-day or common-sense experiences may be considered by the circuit court just the same as the officer's knowledge gained

through law enforcement training and experience. *Kansas v. Glover*, 140 S. Ct. 1183, 1189-90 (2020). As with weighing conflicting testimony, we give deference to the circuit court as the fact-finder who has the superior position to judge the credibility of the sole witness and to assess the reasonableness of the officer's inferences. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

Triplett's argument that no statements directly support the circuit court's findings advocates application of a different standard of review than our long-settled standard. We "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by [trial] judges." *Whitmore*, 92 S.W.3d at 79 (quoting *Ornelas*, 517 U.S. at 699). Det. Holznagle's testimony was substantial evidence and his testimony was such that the circuit court could draw the inferences about which Triplett complains.

In regard to Triplett's complaint about the finding that he had no one available to retrieve his personal items within a reasonable time, the circuit court heard testimony that Triplett, a resident of Kentucky, was being arrested in Michigan around midnight;[5] that Triplett paid for an overnight stay; and that it appeared he was the only occupant of the hotel room. A finding of fact is clearly erroneous only if it is manifestly against the great weight of the evidence. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citing *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967)). Consequently, upon review, we find that the circuit court's findings of fact were not clearly erroneous and consider

---

[5] Although Triplett challenges this finding because he has family in Michigan who could have secured his belongings for him, no such testimony was elicited at the suppression hearing.

10

next whether these findings support the circuit court's conclusions of law that the removal of Triplett's belongings by the police was reasonable and did not impinge on Triplett's Fourth Amendment rights.

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.[6]

"This text protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (internal citations omitted).[7] A privacy right need not be implicated to bring Fourth Amendment protection to bear upon an unreasonable seizure of property. *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 60-66 (1992).[8] "Although the

---

[6] Section 10 of the Kentucky Constitution also guarantees the individual right to be free from unreasonable searches and seizures. It provides that "[t]he people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[7] *Jacobsen* concluded that governmental authorities' assertion of temporary dominion and control over a package and its contents entrusted to Federal Express for delivery constituted a "seizure." 466 U.S. at 120. The seizure was found to be reasonable. *Id.* at 121.

[8] *Soldal*, 506 U.S. at 66 n.10 (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)), also explains: "Of course, if the police officers' presence in the home itself

11

interest protected by the Fourth Amendment injunction against unreasonable searches is quite different from that protected by its injunction against unreasonable seizures, neither the one nor the other is of inferior worth or necessarily requires only lesser protection." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987) (internal citation omitted); *accord Soldal*, 506 U.S. at 60-64.[9]  Under the Fourth Amendment then, dwelling-place searches and dwelling-place seizures must be reasonable and must generally require a warrant to be valid. *Hicks*, 480 U.S. at 326-28 ("A dwelling-place search, no less than a dwelling-place seizure, requires probable cause . . . .").[10]

"The reasonableness of [the government's] invasion of the citizen's privacy [or possessory interest] must be appraised on the basis of the facts as they existed at the time that invasion occurred." *Jacobsen*, 466 U.S. at 115. However, there are established exceptions to the Fourth Amendment's warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967).  One exception,

---

entailed a violation of the Fourth Amendment, no amount of probable cause to believe that an item in plain view constitutes incriminating evidence will justify its seizure."

[9] *United States v. Place*, 462 U.S. 696, 700–01 (1983) acknowledges that "in the context of personal property, and particularly containers, the Fourth Amendment challenge is typically to the subsequent search of the container rather than to its initial seizure by the authorities."

[10] *Hicks*, 480 U.S. at 327 states:

> We do not say, of course, that a seizure can never be justified on less than probable cause.  We have held that it can—where, for example, the seizure is minimally intrusive and operational necessities render it the only practicable means of detecting certain types of crime.  See, *e.g.*, *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (investigative detention of vehicle suspected to be transporting illegal aliens); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (same); *United States v. Place*, 462 U.S. 696, 709, and n.9, 103 S.Ct. 2637, 2645 and n.9, 77 L.Ed.2d 110 (1983) (dictum) (seizure of suspected drug dealer's luggage at airport to permit exposure to specially trained dog)."

pertinent here, is consent. *Schneckloth*, 412 U.S. 218; *see also Soldal*, 506 U.S. at 65-66. The burden of proof rests with the government to show the search and seizure are justified under one of the exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (citations omitted). If the government does not meet its burden, introduction of the evidence is generally prohibited. *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963). Under the exclusionary rule, illegally obtained evidence and any evidence derived from it must be excluded. *Id.* at 485.

Case law establishes that Fourth Amendment protection extends to such places as hotel or motel rooms. *Stoner v. California,* 376 U.S. 483, 490 (1964). However, a guest does not have a reasonable expectation of privacy in the hotel room or any article within it when the hotel lawfully takes possession of the room once a hotel guest's rental period has been lawfully terminated. *Blades v. Commonwealth*, 339 S.W.3d 450, 453 (Ky. 2011) (citing *United States v. Allen*, 105 F.3d 695, 699 (6th Cir. 1997)).

Triplett argued before the circuit court that he did not give consent to search the room; no other exception to the warrant requirement was met; and he maintained his reasonable expectation of privacy because his rental period had not expired at the time of his arrest. He reiterates those arguments here, but further complains that in relation to "consent to evict," which Det. Holznagle testified he was given by the hotel, the "inventory search"[11] conducted by the Michigan police was a ruse.

---

[11] The Commonwealth's response to the motion to suppress likened the officers' photographing and inventorying Triplett's items to the inventory search conducted by the police in their community caretaking function in automobile impoundment cases

13

The circuit court decided the motion to suppress when it concluded that Triplett consented to the police seizure of the items, which infers the officers could lawfully enter Triplett's hotel room and remove his belongings for safe-keeping. Consequently, the circuit court did not reach any conclusions regarding Triplett's eviction-related arguments. Because we agree with the circuit court, we need not and do not consider whether Triplett no longer had a reasonable expectation of privacy because the hotel clerk wanted him evicted from the hotel upon his arrest.

Based upon our de novo review, the findings of facts and totality of the circumstances establish that the Michigan officers did not unreasonably interfere with Triplett's possessory interests.[12] *Jacobsen*, 466 U.S. at 115. Triplett was arrested in Michigan and was understandably concerned about his personal belongings being left behind in a hotel room. Under the circumstances, there was nothing fundamentally wrong with the Michigan officers taking possession of Triplett's belongings for safekeeping. And only after a warrant was secured by Kentucky authorities did they search the electronic equipment, computers, jump drives, videos, and discs. Triplett consented to the officers' seizure of the items in his hotel room and therefore the Michigan officers were justified in inventorying the items and securely

---

and that this case satisfied the *South Dakota v. Opperman*, 428 U.S. 364 (1976), factors for assessing whether an inventory search pursuant to standard police procedures is reasonable.

[12] Det. Holznagle testified that another officer had contact with Mrs. Triplett and at her request accessed the vehicle and recovered cash from it. Det. Holznagle stated he was unaware if that officer and Mrs. Triplett discussed release of Triplett's personal belongings.

14

storing them at the police department. In terms of maintaining possession of the property until Kentucky authorities took possession, no testimony was elicited that the Michigan police were presented with or denied a request for release of Triplett's property by Mrs. Triplett. The trial court properly denied Triplett's motion to suppress because no unlawful seizure occurred.

## II. The Circuit Court Did Not Err by Denying Triplett's Motion to Withdraw His Guilty Plea.

After the jury recommended he serve eighty-five years in prison but prior to the formal sentencing, Triplett filed a *pro se* motion to withdraw his guilty plea. The circuit court appointed counsel and held an evidentiary hearing. The circuit court denied Triplett's motion to withdraw his plea.

RCr 8.10 provides that "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." However, the circuit court only has discretion to deny a motion to withdraw a guilty plea if the plea was voluntarily made. *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002); *see* Kentucky Rule of Criminal Procedure (RCr) 8.10. The circuit court must grant the plea withdrawal upon finding that the plea was involuntary. *Rodriguez*, 87 S.W.3d at 10. "A guilty plea is involuntary if the defendant lacked full awareness of the direct consequences of the plea or relied on a misrepresentation by the Commonwealth or the circuit court." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006) (citing *Brady v. United States*, 397 U.S. 742, 755 (1970)).

Furthermore, in cases when the defendant claims that his plea was not voluntary due to counsel's assistance being ineffective, the circuit court must consider the totality of the circumstances surrounding the guilty plea and

consider, with the focus on the voluntariness of the guilty plea, *Jackson v. Commonwealth*, 363 S.W.3d 11, 16 (Ky. 2012), whether "counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance," *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001). If so, the next inquiry is whether "the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial." *Id.* at 486–87.

Triplett testified to ways his defense counsel was ineffective, such as having limited contact with him and not explaining the penalties for sex crimes, parole eligibility after serving 85% of the sentence, and ineligibility for probation. He also testified he entered the plea under the duress and threat of abandonment of his private counsel, and that his post-traumatic stress disorder (PTSD) and related headaches and lack of treatment for dental issues impaired his thinking the day he entered his plea. During the plea colloquy, when questioned about his PTSD, Triplett specifically stated that he did not have any mental health impairments affecting his ability to make a knowing and voluntary plea. During the plea withdrawal hearing, he stated that he just could not speak up during the plea and being a polite person, probably would have said yes to the questions whether he was knowingly and voluntarily entering the plea. Triplett concedes the guilty plea colloquy was thorough.

Triplett's former defense counsel also testified regarding his representation of Triplett and the advice to Triplett to plead guilty and have jury sentencing. A "Client Understanding" memo detailing counsel's opinion,

16

which Triplett signed on the day he entered his plea, was introduced into evidence. Former counsel said that he could not recall the number of times he met face-to-face with Triplett but that he communicated with him through various means including with Triplett's wife. He also testified that he would have explained the consequences of the guilty plea. Former counsel explained that he had sympathy for Triplett's mental health surrounding his PTSD, but that he never doubted Triplett's competency to participate in his defense. In response to the circuit court's question, he opined that if Triplett went to trial, the jury would have seen even more harmful video footage than that played for the sentencing jury.

> Because of the factual determinations inherent in this evaluation, Kentucky appellate courts have recognized that "the trial court is in the best position to determine if there was any reluctance, misunderstanding, involuntariness, or incompetence to plead guilty" at the time of the guilty plea and in a "superior position to judge [witnesses'] credibility and the weight to be given their testimony" at an evidentiary hearing. Accordingly, this Court reviews a trial court's ruling on a defendant's motion to withdraw his guilty plea only for abuse of discretion by "ascertain[ing] whether the court below acted erroneously in denying that appellant's pleas were made involuntarily.

*Bronk*, 58 S.W.3d at 487 (internal citations omitted).

The circuit court entered a written ruling evaluating the totality of the circumstances, *id.*, describing Triplett as a very intelligent, educated man whose criminal background provided extensive knowledge of the legal system and how it works. The circuit court observed that along with stating he was satisfied with counsel's performance during the plea, Triplett is not an individual to be coerced by anyone or let his attorney not adequately represent him. The circuit court also considered that during the sentencing hearing four

17

days after the plea, Triplett again provided no indication that his plea was involuntary, but instead testified in a frank manner about being a veteran, having health problems, and his history of incarceration. The circuit court concluded that Triplett's plea was freely, intelligently, and knowingly made. Upon review of the record, the circuit court's decision that Triplett's plea was voluntary is not clearly erroneous and consequently the circuit court did not abuse its discretion by denying Triplett's motion to withdraw his guilty plea.

*Thomas v. Commonwealth*, 605 S.W.3d 545, 554 (Ky. 2020).

### III. Palpable Error Relief Is Not Warranted for the Admission of Evidence of Triplett's Prior Offenses.

The Commonwealth introduced evidence of Triplett's prior criminal offenses via the taped interview conducted by a detective upon Triplett's return to Kentucky. During the interview Triplett provided details of his prior criminal history including "playing around with his babysitter" who claimed she was raped (Triplett later testified that, twenty-two-years-old at the time, the sixteen-year-old's parents prosecuted him); involvement in an armed robbery where a waitress was shot; holding two federal agents at gunpoint and being on the FBI's Ten Most Wanted List; and escaping from prison by walking out the front door. In response to the Commonwealth's question, the detective testified that Triplett described the crimes as someone else's fault and did not accept responsibility for the crimes. Defense counsel did not object while the tape was played, but cross-examined the detective, questioning whether Triplett was convicted of all the crimes he described. The detective responded it did not appear Triplett was convicted for the escape and he was unsure about the crime of holding the federal officers at gunpoint.

18

Triplett now complains the jury heard unduly prejudicial details about his alleged prior offenses, pointing to the details of the rape victim becoming pregnant; of his having held two federal agents at gunpoint; and of his being on the FBI's Most Wanted List. He also complains that the Commonwealth did not introduce any certified copies of prior offenses, the method to reliably prove Triplett's prior convictions. He seeks palpable error review of these issues.

Under RCr 10.26, if an error is found to be palpable and if that unpreserved error affects the substantial rights of the defendant, the appellate court may grant appropriate relief if manifest injustice has resulted from the error. An error is palpable when it is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). As recently explained in *Nami Resources Company v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323, 338–39 (Ky. 2018), at trial, it is the easily perceptible, obvious, and readily noticeable errors which are so egregiously prejudicial as to cause manifest injustice for which the trial court has a duty to take corrective action. The error must be "so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

"Kentucky's Truth-in-Sentencing statute is geared toward providing the jury with information relevant to arriving at an appropriate sentence for the particular offender." *Williams v. Commonwealth*, 810 S.W.2d 511, 513 (Ky. 1991). KRS 532.055(2)(a) thus allows the Commonwealth to introduce evidence concerning the nature of the defendant's prior offenses for which he was convicted, KRS 532.055(2)(a)2, and the date of the commission, date of

19

sentencing, and date of release from confinement or supervision from all prior offenses, KRS 532.055(2)(a)3. While the nature of the defendant's prior offenses is admissible, Triplett directs our attention to *Mullikan v. Commonwealth*, 341 S.W.3d 99, 109 (Ky. 2011), which explains that "the evidence of prior convictions is limited to conveying to the jury the elements of the crimes previously committed," and advises that when conveying the elements, identifiers which might trigger jurors' memories of the crimes should be avoided. Triplett also argues that under *Finnell v. Commonwealth*, 295 S.W.3d 829, 835 (Ky. 2009), wherein we found CourtNet was an unofficial "document" and not a reliable source to prove a defendant's prior convictions, the detective should not have been allowed to testify about Triplett's prior criminal history using an NCIC (National Crime Information Center) report.

Although Triplett does not make clear which aspect of the interview's description of holding federal agents at gunpoint goes beyond the elements of the crime, we agree that the detail that Triplett was on the FBI's Most Wanted List went beyond the nature of the offense. We find likewise with respect to the details that his prior rape victim was his babysitter, became pregnant, and that Triplett claimed she "cried rape." However, as to *Mullikan*'s other guidance, personal identifiers were not used. Furthermore, as Triplett later testified in response to the Commonwealth's questioning, the rape of the minor occurred in 1972 and his next felony occurred in 1978. According to his own testimony, Triplett was not a resident of Kentucky when he committed these crimes so triggering jurors' memories would have been a negligible concern in this case.

20

As to Triplett's argument that the NCIC report is not a source competent to prove his convictions, *Finnell,* 295 S.W.3d at 835, this case is distinguishable from *Finnell.* Triplett provided his criminal history during the detective's interview with him. On cross-examination, defense counsel elicited testimony from the detective which clarified Triplett's criminal convictions. The detective used the NCIC report to testify that Triplett had not been convicted of escape nor apparently for holding the federal agents at gunpoint. The essential problem appears to be that Triplett described crimes for which he was not convicted, crimes which do not fall within KRS 532.055(2)(a)(2). Although information regarding crimes for which he was not convicted should not have been introduced into evidence, nor the extraneous information described above, we cannot conclude that any error, individually or collectively, was so manifest that it threatened the integrity of the judicial process. Moreover, having concluded the trial court did not err by declining to suppress the videos showing the victims' sexual assaults (and then allowing the videos to be shown to the jury), we cannot say that "there is a 'substantial possibility' that the result in the case would have been different without the error." *Brewer,* 206 S.W.3d at 349. Stated differently, none of these errors regarding the admission of details of prior offenses had a substantial possibility of changing the outcome of this case.

**IV. The Jury Instruction Was Not Erroneous.**

Pursuant to KRS 532.055(2), "[t]he jury shall recommend whether the sentences shall be served concurrently or consecutively." The jury first fixed the penalty for each of the following counts at twenty years: rape in the first

21

degree (S.E.), rape in the first degree (J.B.), sodomy in the first degree (J.B.), and kidnapping (J.B.). The jury fixed the penalty for the offense of criminal possession of a forged instrument at five years. The jury was then instructed it was authorized to enter a verdict as follows:

> You will further recommend in your verdict whether the punishment which you have fixed for the Defendant under Counts ONE, TWO, THREE, FOUR, and Count ONE of the second indictment should run <u>concurrently</u> (at the same time) or <u>consecutively</u> (one to begin after the completion of the other – the sentences are all added together).

The preface of the form verdict stated: "We recommend that the punishment fixed for the Defendant under Counts ONE, TWO, THREE, FOUR, and Count ONE of the second indictment to be served concurrently (at the same time) or consecutively (one after the other) as follows[.]" The verdict form then presented for each crime the option of recommending the fixed punishment run concurrently or consecutively, the format for each being:

> We recommend that the punishment fixed for the Defendant under Count [number, crime identification], be served . . . :
>
> _____CONCURRENTLY (at the same time)
>
> _____CONSECUTIVELY (one after the other).

The jury marked "consecutively" for each of the five penalties.

Triplett, citing *Stoker v. Commonwealth*, 828 S.W.2d 619, 627 (Ky. 1992), argues that this form verdict is erroneous because it did not allow the jury to choose among all the options-the options of running the sentences all concurrently or all consecutively, or partially consecutively and partially concurrently. He seeks palpable error review.

22

In *Stoker*, the defendant was convicted of seventeen counts, but unlike the present case, the jury was not given the option to indicate for each count whether the sentence should run concurrently or consecutively. The instruction following the fixing of the sentence for all seventeen counts was:

> You will further recommend in your verdict whether the punishments which you have fixed for the Defendant should run concurrently (at the same time) or consecutively (one to begin after the completion of the other).

The form of verdict then stated:

> We, the jury, recommend that the punishments fixed for the Defendant shall run _____
> concurrently or consecutively.

*Id.* at 626. We concluded the instruction was erroneous because "where there are more than two offenses, some may be run concurrently and some consecutively, . . . the jury should be advised accordingly." *Id.* at 627. *Stoker*'s directive was satisfied in this case because the jury was provided the opportunity to recommend for each crime whether the penalty should run concurrently or consecutively.

Triplett also cites *Lawson v. Commonwealth*, 85 S.W.3d 571, 581 (Ky. 2002), for the premise that the jury should have been instructed to recommend that the sentences run concurrently or consecutively, in whole or in part, and provided a verdict form that clearly allows for all options. In *Lawson*, 85 S.W.3d at 580 n.22, we

> suggest[ed] a more informative and correct verdict form in [that] case would read:

> We, the jury, recommend that the sentences fixed for the Defendant under Counts 1 and 2 above shall be served concurrently (at the same time) or consecutively (one to begin after the completion of the other), in whole or in part, as follows: . . . .

23

However, as explained in *Davis v. Commonwealth*, 365 S.W.3d 920, 922 n.3 (Ky. 2012), this suggestion was non-precedential obiter dictum, and it remains so.[13]

To the extent Triplett argues that the trial court erred by omitting "in whole or in part" instructions, "when the allegation of instructional error is that a particular instruction should have been given but was not . . . , RCr 9.54 operates as a bar to appellate review unless the issue was fairly and adequately presented to the trial court for its initial consideration." *Martin v. Commonwealth*, 409 S.W.3d 340, 346 (Ky. 2013). Under this principle, we may not review the lack of "in whole or in part" instructions for palpable error. *Id.* at 345. To the extent Triplett argues that the instructions were incorrectly stated or defectively phrased by not including "in whole or in part" instructions, no precedent exists in support which would allow palpable error relief. *See id; Davis,* 365 S.W.3d at 922 n.3. Thus, pursuant to *Stoker* and its progeny, we conclude that the jury instructions were not erroneous and palpable error relief is not warranted.

## CONCLUSION

For the foregoing reasons, the Montgomery Circuit Court's amended judgment and sentence is affirmed.

All sitting. All concur.

---

[13] Cooper and Cetrulo's *Kentucky Instructions to Juries (Criminal)*, Section 12.19B (6th ed., LexisNexis 2016), provides an exemplar of the *Lawson* suggestion but the commentary qualifies the instruction as not being authoritative, citing *Davis*.

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Perry Thomas Ryan
Assistant Attorney General