Julia Martin **THORPE**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 2008–CA–000823–MR.

Court of Appeals of Kentucky.

Oct. 2, 2009.

Erin Hoffman Yang (argued), Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Jason B. Moore (argued), Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; THOMPSON, Judge; HARRIS,[1] Senior Judge.

COMBS, Chief Judge.

Julia Thorpe appeals her conviction in the Mason Circuit Court of fraudulently obtaining a prescription for a controlled substance and of being a persistent felony offender. After our review of the record, we reverse and remand for a new trial.

Sometime in early 2007, Thorpe and her three sons moved in with Thorpe's mother, Sheila Goldsmith, who suffers from Alzheimer's disease. Thorpe transported her to doctor appointments and picked up her prescriptions and medications, one of which included Percocet.

In September 2007, Goldsmith moved from her home in Maysville to Lexington to live with her son, David Browning. After Goldsmith left, Thorpe called her mother's doctor to ask for a prescription for Percocet. The doctor remembered that Goldsmith's sons had requested that he transfer her prescriptions to a pharmacy in Lexington. He contacted the Maysville Police Department. Upon advice of the police, the doctor proceeded to write the prescription for Goldsmith. When Thorpe arrived at the doctor's office, police officers were waiting to arrest her.

Thorpe was indicted on one count of attempting to obtain a controlled substance by fraud and one count of persistent felony offender in the second degree.

Thorpe's sister-in-law, Jackie Browning, testified at the jury trial in March 2008. Browning opened her testimony by declaring that Goldsmith moved to Lexington because she was not receiving proper care. Thorpe's counsel objected, and the trial court advised the Commonwealth that it would only allow this line of questioning "to an extent." Browning then stated that Goldsmith "had not been fed" before arriving in Lexington. Thorpe's counsel again objected, and the court agreed that Browning did not have personal knowledge relating to whether Goldsmith had eaten before she left Maysville. As the Commonwealth continued questioning Browning, she next stated that Goldsmith looked as if she had been released from a concentration camp. At that point, Thorpe's

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

counsel objected and made a motion for a mistrial, which the trial court denied.

Browning continued testifying and next related that Thorpe had called her mother and begged her to return to Maysville because Social Services were threatening to remove her children from the home. Thorpe's counsel made another motion for a mistrial. Although the court stated that it was inclined to grant a mistrial, it reserved the motion and allowed testimony to continue.

Thorpe testified that she believed that her mother was only going for a week to the home of David and Jackie Browning. She knew that her mother took with her the Alzheimer's medication and an antibiotic, but she could not find the pain medicine. Thorpe claimed that she had the Percocet prescription filled in anticipation of Goldsmith's return. She said that she was not aware that her half-brothers and sisters-in-law had arranged to transfer Goldsmith's prescriptions to a Lexington pharmacy.

At the close of all testimony, the trial court refused to grant a mistrial and instead offered to admonish the jury to disregard the questionable portions of Browning's testimony. Thorpe declined the admonition. The jury returned a guilty verdict and recommended the maximum sentence of ten years (enhanced by the persistent felony offender conviction). This appeal follows.

■ We first address Thorpe's argument that the trial court improperly admitted Jackie Browning's testimony concerning the telephone conversation between Thorpe and Goldsmith. Thorpe's counsel objected and made a motion for a mistrial because the Commonwealth had failed to disclose during discovery its intention to utilize this conversation. Holding that the statement was not incriminating at the time that Thorpe made it, the court allowed it to be admitted.

Kentucky Rule(s) of Criminal Procedure (RCr) 7.24(1) requires the Commonwealth to furnish the defendant with "the substance ... of any oral incriminating statement ... to have been made by [the] defendant to any witness[.]" The Commonwealth correctly points out that our Supreme Court recently held that in order to be subject to RCr 7.24, a statement *must* be incriminating at the time it is made—not merely revealed to be so in the context of the trial. *Chestnut v. Commonwealth*, 250 S.W.3d 288, 296 (Ky.2008).[2]

Thorpe was on trial for fraudulently obtaining a prescription for a controlled substance under Kentucky Revised Statute (KRS) 218A.140(1)(a). That statute makes it a crime to "obtain or attempt to obtain a prescription for a controlled substance by knowingly misrepresenting to, or knowingly withholding information from, a practitioner." Neither party disputed that Thorpe indeed did obtain a prescription for a controlled substance. However, at issue is her *mens rea*, whether she *knew* that her mother had *permanently relocated* to Lexington—and thus whether she intentionally concealed the change in circumstances from the doctor.

The Commonwealth admits that it did not supply the defense with the substance of Browning's statement that she heard Thorpe beg her mother to come home. Again, the Commonwealth contends that the statement was not incriminating at the time it was made. However, at trial, the Commonwealth used *that precise statement to incriminate Thorpe* by arguing and intimating that Thorpe began calling the doctor's office to obtain the prescription on the very same day that she en-

---

**2.** We note that *Chestnut* was rendered subsequent to Thorpe's trial.

gaged in the phone conversation with Goldsmith. The contradiction is patent. If Thorpe arguably was engaged in a criminal act of attempting to fraudulently obtain a prescription, the substance of her conversation with her mother as to her plans to return to Maysville was highly relevant and should have been disclosed to Thorpe. It went directly to the issue of *mens rea*, having the ability either to inculpate or to exculpate her. Thus, under these circumstances, we are persuaded that the Commonwealth had a duty to disclose its intent to use the statement.

An appellate court may set aside a conviction if a discovery violation creates "a reasonable probability that had the evidence been disclosed the result at trial would have been different." *Akers v. Commonwealth,* 172 S.W.3d 414, 417 (Ky. 2005). Withholding the statement from Thorpe was "a surprise attack on an unsuspecting defense counsel's entire defense strategy" that is condemned in *Chestnut, supra* at 296. The trial court acknowledged that it did not think Thorpe's counsel was prepared for a defense against this testimony. Thorpe's counsel agreed.

In this case, there is a reasonable probability that if Thorpe's counsel had been prepared to confront this evidence, the jury might have reached a different verdict. At issue is whether Thorpe knew that her mother's move to Lexington was permanent rather than for one week in duration. Other than Browning's testimony, the only evidence presented by the Commonwealth was her half-brother's testimony that he had told Thorpe that the house had to be sold. The time frame for the putative sale was indefinite. Thus, the bare fact of the move for an indefinite time may have been a pivotal point for a jury when contrasted with Thorpe's testimony.

Thorpe also argues that the comments made by Jackie Browning about Goldsmith's condition were prejudicial. Kentucky Rule(s) of Evidence (KRE) 402 instructs that "[a]ll relevant evidence is admissible. . . . Evidence which is not relevant is not admissible." Under KRE 403, evidence that is relevant "may be excluded if its probative value is substantially outweighed by the danger of *undue* prejudice, confusion of the issues, or misleading the jury." (Emphasis added).

Even relevant evidence has the capacity to be prejudicial. *Ford Motor Co. v. Fulkerson,* 812 S.W.2d 119, 127 (Ky. 1991). Evidence is *unduly* or *unfairly* prejudicial when it "suggest[s] decision on an improper basis." Robert G. Lawson, The Kentucky Evidence Law Handbook, § 2.10(4)(b) (4th ed. 2003). Evidence that "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case" is unfairly prejudicial. *Id.*

Whether evidence falls on the side of probative or prejudicial is a matter reserved to the discretion of a trial court. In reviewing the evidence under an abuse of discretion standard, we must "view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Major v. Commonwealth,* 177 S.W.3d 700, 707 (Ky.2005).

In the case before us, the comments about Goldsmith's condition in no way related to Thorpe's drug charge and were calculated to arouse the animus of the jury against her. The Commonwealth argued that it needed to explain why Goldsmith left Maysville to move to Lexington. However, the trial court itself remarked that Thorpe was being put on trial for neglecting an elderly person—a crime for

which she was neither charged nor was being tried. We are persuaded that admission of this evidence fell on the side of the prejudicial rather than the probative and that it very likely could have tainted the jury. Society is properly protective of the elderly—especially victims of Alzheimer's disease. The accusations and innuendoes of Thorpe's faulty caretending of her mother outweighed and overshadowed the scant evidence offered by the Commonwealth as to her criminal intent to fraudulently obtain the prescription at issue.

■ The Commonwealth correctly notes that the trial court offered to admonish the jury to disregard all of the testimony regarding the condition of Thorpe's mother or her house and that Thorpe's counsel declined to accept the admonition. It relies on Kentucky's presumption that any evidentiary error can be cured by an admonition to a jury. *Greene v. Commonwealth*, 244 S.W.3d 128, 138 (Ky.App.2008) (*citing Mills v. Commonwealth*, 996 S.W.2d 473, 485 (Ky.1999)).

■ The curative presumption can be overcome in only two situations: 1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or 2) when the question was asked without a factual basis and was inflammatory or highly prejudicial. *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky.2003) (internal citations omitted).

Applying the first *Johnson* test, we are persuaded that an admonition would not have cured the evidentiary error committed at Thorpe's trial. In harmony with the Supreme Court's reasoning in *Dickerson v. Commonwealth*, 174 S.W.3d 451 (Ky.2005), we agree that in this case, an admonition would have been insufficient to "unring the bell" of inadmissible evidence. *Id.* at 466.

Thorpe was essentially on trial for her housekeeping and caregiving skills. That evidence was clearly devastating to Thorpe, who received the maximum sentence while little actual evidence of the charge crime existed. From the circumstances before us, we believe that the inadmissible evidence had an inflammatory impact on the jury.

We are mindful of the charge by the Supreme Court of the United States cautioning appellate courts not to assume the jury's function in determination of guilt or innocence. *Kotteakos v. United States*, 328 U.S. 750, 763, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). However, it tempered the admonition by advising appellate courts that:

[T]his does not mean that the appellate court can escape altogether taking account of the outcome. To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum. In criminal causes that outcome is conviction. . . . And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. . . . [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Id.* at 764–65, 66 S.Ct. 1239 (citations omitted).

Considering the combination of the discovery error and the prejudicial testimony, we conclude that Thorpe was denied a fair trial. If arguably the errors might not individually be sufficient to remand for a new trial, in combination they are. *See Funk v. Commonwealth,* 842 S.W.2d 476, 483 (Ky.1992); *Peters v. Commonwealth,* 477 S.W.2d 154, 157 (Ky.1972).

We address Thorpe's final argument only because of the possibility that it may recur in the event of a re-trial. Thorpe contends that the prosecutor from the Commonwealth Attorney's office should have recused herself. The prosecutor originally assigned to the case was stranded in an airport out of state at the time of the trial. The prosecutor who substituted is a first cousin of Thorpe's half-brothers. One of Thorpe's four half-brothers and two of their wives testified at trial as witnesses for the Commonwealth.

Although the prosecutor's presence poses a question mark, we do not hold that it was error. KRS 15.733(2)(c) & (d) provide in pertinent part as follows:

> [a] prosecuting attorney shall disqualify [her]self in any proceeding in which ... a member of [her] *immediate* family ... [i]s known by the prosecuting attorney to have an interest that could be substantially affected by the outcome of the proceeding; [or] [i]s to the prosecuting attorney's knowledge likely to be a material witness in the proceeding[.]

(emphasis added). Since *immediate family* is not defined by the statute, we are to construe it according to its common, everyday meaning. *Wilfong v. Commonwealth,* 175 S.W.3d 84, 96 (Ky.App.2004).

Black's Law Dictionary defines it as "a person's parents, spouse, children, and siblings." at 620 (7th ed. 1999). Thus, first cousins are not contained within the ambit of the statute's criteria for recusal. In addition, we note that our Supreme Court has held that it was proper for a prosecutor to try a case in which he was the victim's limited legal guardian. *Barnett v. Commonwealth,* 979 S.W.2d 98 (Ky.1998). Accordingly, we find no error.

Based on the improper admission of unduly prejudicial evidence, we reverse this conviction and remand to the trial court for further proceedings consistent with this opinion.

ALL CONCUR.