**Andre FINNELL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–SC–000085–MR.

Supreme Court of Kentucky.

Oct. 29, 2009.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant Andre Finnell was convicted by the Kenton Circuit Court of facilitation of first-degree robbery, reckless homicide, and of being a persistent felony offender (PFO) in the second degree. On appeal, Appellant claims that the Commonwealth failed to timely disclose evidence that he could have used to impeach a Commonwealth witness, that the trial court erroneously failed to instruct the jury on facilitation to reckless homicide, and that the trial court erroneously allowed the Commonwealth to prove his criminal history during the penalty phase with testimony based on an unofficial source. For the reasons set forth below, Appellant's convictions of facilitation of first-degree robbery and reckless homicide are affirmed, but his sentence is set aside and this case is remanded for a new penalty phase.

## I. Background

Howard Edwards robbed, shot, and killed James Clowers on January 21, 2006. Appellant testified at trial that he was at the scene of the crime because he was selling crack cocaine to Clowers. During the sale, Edwards pushed him to the side, produced a pistol, and announced that he was robbing Clowers, who was sitting in the driver's seat of his van and began to roll up his driver's-side window. Edwards then shot Clowers, killing him. Appellant testified that he was unaware that Edwards planned to rob Clowers and that he was shocked that Edwards shot Clowers.

Edwards testified that Appellant had planned the robbery with him. In particular, he testified that Appellant gave him the gun and told him to interrupt the drug sale to rob Clowers.

Michael Tally, who had been a cellmate of Appellant, was called to testify for the Commonwealth. Appellant objected to Tally's testimony because the Commonwealth had failed to timely disclose its agreement with him. In exchange for Tally's testimony, the Commonwealth agreed to write a letter to a federal prosecutor recommending a reduction in his federal sentence. Although Appellant had re-

quested disclosure of any such agreements long before trial, the Commonwealth failed to disclose this agreement until voir dire.

The trial court overruled Appellant's objection and allowed Tally to testify. Tally testified that Appellant admitted to planning the robbery with Clowers and that Appellant said it was a "robbery gone bad." Appellant cross-examined Tally, and Tally stated that he hoped to receive a reduction in his federal sentence in exchange for his testimony. He also stated that he knew the Commonwealth had to write a letter to the federal prosecutor for this to occur.

After the conclusion of the presentation of evidence, Appellant requested that the trial court give the jury an instruction on facilitation to reckless homicide. The trial court declined to give this instruction.

During the penalty phase, the Commonwealth called a parole officer to testify to Appellant's criminal history. She first testified that Appellant had been convicted of first-degree trafficking of a controlled substance, a felony. In support of this testimony, she stated that she had reviewed a certified copy of the judgment. She then testified at length to Appellant's prior misdemeanor convictions, using CourtNet as her sole source. This testimony lasted over eight minutes, during which the parole officer cited information from ten pages of a CourtNet printout and described fourteen of Appellant's prior misdemeanor convictions. Finally, the parole officer again testified to Appellant's prior felony conviction of first-degree trafficking of a controlled substance, this time from her CourtNet printout. Appellant objected to the parole officer's testimony on the grounds that CourtNet is an unofficial source. This objection was overruled.

Appellant was convicted of facilitation of first-degree robbery, reckless homicide, and of being a PFO in the second degree.

He was sentenced to twenty years' imprisonment and appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

### A. Disclosure of Impeachment Evidence

■ The Commonwealth must disclose exculpatory evidence in time for a defendant to make a "due investigation." *Epperson v. Commonwealth*, 809 S.W.2d 835, 840 (Ky.1990). Exculpatory evidence includes information that could be used to impeach a Commonwealth witness. *Napue v. Illinois*, 360 U.S. 264, 270, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Rolli v. Commonwealth*, 678 S.W.2d 800, 802 (Ky.App. 1984). The Commonwealth's delay in disclosing such evidence is reversible error if the delay gave the Commonwealth "a more favorable opportunity to convict," *Epperson*, 809 S.W.2d at 840, which renders the verdict unworthy of confidence, *U.S. v. Bagley*, 473 U.S. 667, 668, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

■ Here, the Commonwealth's delay in disclosing its agreement with Tally is not reversible error. Appellant had ample time to make a due investigation, despite the Commonwealth's delay. From voir dire until Tally was called to testify at trial, Appellant's attorney pursued an investigation, although it ultimately proved unfruitful. Appellant's attorney had gone to federal court to access Tally's records, but they were sealed. His attorney also called Tally's attorney, but Tally's attorney refused to answer any questions. The record shows that Appellant's investigation was unfruitful, but it also shows that he had enough time to adequately pursue it. Indeed, in his brief, Appellant characterizes his trial counsel's attempts to investigate Tally as "repeated[ ]," but complains

that these repeated attempts revealed no helpful information.

The fact is Appellant learned everything that Tally and the Commonwealth knew from the Commonwealth's disclosure at voir dire. After voir dire, Appellant knew that Tally hoped to obtain a sentence reduction in his federal case by testifying as a witness for the Commonwealth. He also knew that the Commonwealth, if satisfied with Tally's testimony, could ask the federal prosecutor to request such a sentence reduction. Neither Tally nor the Commonwealth knew any more.

The Commonwealth's delay did not give it a more favorable opportunity to convict Appellant. On cross-examination, Appellant asked Tally about his interest in testifying, and Tally admitted that he hoped to receive a reduction in his federal sentence and that he knew he needed to win the Commonwealth's favor to have this hope fulfilled. Appellant was able to adequately impeach Tally, and thus the Commonwealth's delay did not adversely affect Appellant.

Although the Commonwealth should have given Appellant information about its agreement with Tally sooner, its delay did not render the Appellant's verdict unworthy of confidence. Thus, the Commonwealth's delay is not reversible error.

### B. Instruction on Facilitation to Reckless Homicide

■ The trial court must give any requested instruction that is supported by a reasonable view of the evidence. *Monroe v. Commonwealth*, 244 S.W.3d 69, 75 (Ky. 2008). A person is guilty of criminal facilitation if, "acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime." KRS 506.080. By its plain meaning, criminal facilitation requires the facilitator to know that the principal actor "intends to commit a crime." *Id.; Skinner v. Commonwealth*, 864 S.W.2d 290, 298 (Ky.1993).

Reckless homicide, however, is characterized by a *lack* of intent of the person committing homicide. To be convicted of reckless homicide, a person must act "*without* an intent to kill but fail[ ] to perceive a substantial and unjustifiable risk that his actions would result in the victim's death." *Saylor v. Commonwealth*, 144 S.W.3d 812, 819 (Ky.2004) (emphasis added) (citing KRS 507.050(1) and KRS 501.020(4)).[1]

■ In this case, the trial court properly declined to instruct the jury on facilitation to reckless homicide. In fact, it is impossible, under any set of facts, to facilitate reckless homicide. Facilitation requires knowledge that a person intends to commit a crime; a person cannot intend to commit reckless homicide. Accordingly, one cannot facilitate reckless homicide.

■ Moreover, it is no answer that the instruction would be required because a reasonable view of the evidence supports that Appellant knew Edwards intended to commit a crime other than reckless homicide, such as robbery. "[S]imple knowledge that a crime will be committed is not enough to satisfy the knowledge element for facilitation...." *Commonwealth v. Nourse*, 177 S.W.3d 691, 700 (Ky.2005). Instead, the defendant must have knowl-

---

1. There is a second theory of conviction for reckless homicide, but it is not germane here. Essentially, that theory is one of a reckless, wrongful use of force under a false claim of self-defense. *Id.* (citing KRS 501.020(4) and KRS 503.120(1)). No plausible view of the evidence here could suggest that Edwards shot Clowers under claim of self-defense.

edge that the principal actor intends to commit the crime the defendant is actually charged with facilitating. *Id.* Hence, the trial court was correct to decline to instruct the jury on facilitation to reckless homicide.

Last, it is worth noting that the crime for which Appellant was convicted, reckless homicide, is appropriate for his conduct based on the evidence presented at trial. If Appellant gave Edwards a gun and told him to rob Clowers, the jury could reasonably conclude that he acted "without an intent to kill [Clowers] but failed to perceive a substantial and unjustifiable risk" that arming Edwards for the robbery would result in Clowers' death. *Cf. Saylor,* 144 S.W.3d at 819. Consequently, the instructions given at trial were proper.

### C. Proof of Appellant's Criminal History/CourtNet

During the penalty phase of a trial, the Commonwealth may offer evidence of a defendant's prior convictions, both felony and misdemeanor. KRS 532.055(2)(a)(2) (truth-in-sentencing statute). However, in order to obtain a conviction for persistent felony offender, the Commonwealth *must* prove the status by introducing evidence of one prior felony conviction for PFO in the second degree and two or more prior felony convictions for PFO in the first degree. KRS 532.080(1),(2). This is obviously done after the guilt phase of the trial, and if there is a PFO charge, the jury first decides the penalty for the underlying offenses, then the enhancement that comes from the PFO status, if any.

This Court has approved using documents, such as certified copies of the judgment, to prove the prior convictions, and this Court has allowed the official records of convictions to be read to the jury. *E.g., Martin v. Commonwealth,* 13 S.W.3d 232, 235 (Ky.1999); *Kendricks v. Common-*

*wealth,* 557 S.W.2d 417, 419 (Ky.1977). However, as Justice Combs pointed out in his dissent in *Commonwealth v. Mixon,* 827 S.W.2d 689 (Ky.1992), there must be an *"official* record or judgment" forming the basis of the evidence, because there is a presumption of regularity of official records upon which a defendant can rely. *Id.* at 693 (emphasis added). The majority in *Mixon* found no palpable error when testimony came from an uncertified document, but that should not be read as an endorsement of using anything other than official records or certified copies thereof.

CourtNet is a product that is compiled by the Administrative Office of the Courts (AOC) that is generally useful for investigation into a person's background, but it is not intended as an official record of that background. In fact, CourtNet's user agreement states that the AOC "*CANNOT GUARANTEE* the accuracy of information obtained via CourtNet." Criminal Justice Agency, CourtNet Individual User Agreement, http://courtnet.kycourts.net/ courtnet/manuals/CourtNetCJIndividual. pdf. It further states that "[d]ata obtained from this system is not an official court record" and that "[i]nformation received from CourtNet ... may not at any particular moment reflect the true status of court cases." *Id.*

In this case, the Commonwealth spent over eight minutes reading from ten pages of a CourtNet printout, listing fourteen of Appellant's previous misdemeanor convictions and including one felony that it had already introduced by testimony from a certified copy of the judgment. There was certainly no need to prove this conviction again, and doing so could have the effect of bolstering a false belief in the validity of the CourtNet listing of the fourteen misdemeanors. Oddly, neither party indicated in their briefs that the felony had already been proven by a certified copy of the

judgment, and did not cite that portion of the record. Nonetheless, that is the state of the record this Court must consider. It appears from this that the Commonwealth thought it had to prove the PFO with a copy of a certified judgment, but could introduce truth-in-sentencing evidence with something less. This is not so.

 The purpose of truth in sentencing is to insure that a jury is well-informed about the person on trial. *Commonwealth v. Bass,* 777 S.W.2d 233, 234 (Ky.1989). It is geared toward giving the jury information relevant to arriving at an appropriate sentence for the offender. *Williams v. Commonwealth,* 810 S.W.2d 511, 513 (Ky. 1991). It is apparent that the legislature believed that an offender's prior criminal history had weight in deciding how he should be punished, and since that is the effect of such evidence, it must be competent to prove the convictions. It naturally follows that evidence based on a document such as CourtNet, which proclaims that it is not official, may not reflect the true status of cases, and whose accuracy cannot be guaranteed, is not competent to be weighed in fixing a penalty. Introducing fourteen misdemeanors would be irrelevant if it did not have an effect on the sentence. Given the effect such evidence is assumed to have, it cannot be said that it had no effect on the PFO penalty as well as that for the underlying offenses.

CourtNet is not an appropriate document to use to influence a jury's decision on fixing a penalty. It lacks the requisite indicia of reliability necessary to reliably prove a defendant's prior convictions. To do that, the evidence of prior convictions must come from the official court record, or certified copies thereof. However, other elements of proof, such as proving a defendant's parole status or age, may be introduced through other appropri-

ate records. *Garner v. Commonwealth,* 645 S.W.2d 705, 707 (Ky.1983).

Consequently, this case must be remanded to allow the jury to consider a new sentence on the underlying charge, based on properly authenticated records of prior convictions. The conviction for PFO, being validly supported by a certified copy of the prior felony conviction, stands, but the sentence on the PFO charge must also be determined anew, based on the properly authenticated prior convictions.

### III. Conclusion

Appellant's convictions are affirmed. However, Appellant's sentence is set aside, and this case is remanded for a new proceeding to fix the penalty for the underlying offense and the PFO conviction.

All sitting. All concur.