RENDERED:  APRIL 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1082-MR

ANDREA DAVIS                                                          APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.         HONORABLE BRIAN C. EDWARDS, JUDGE
ACTION NOS. 15-CR-002745 AND 17-CR-000356

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

CLAYTON, CHIEF JUDGE:  Following a jury trial, Andrea Davis ("Davis") was

convicted of possession of a handgun by a convicted felon and being a persistent

felony offender ("PFO") in the first degree.  Davis appeals the Jefferson Circuit

Court's judgment and order of conviction alleging multiple errors by the trial court.

After careful review of both the record and applicable law, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2015, detectives in the Louisville Metro Police Department were investigating a complaint of narcotics activity at Davis's home. Detectives elected to conduct a "knock and talk" whereby they spoke with Davis and explained the nature of the complaint. Upon receiving consent to search the residence, the detectives inquired as to whether drugs or weapons were located inside the house. The detectives later testified that Davis told the detectives that a .40 caliber handgun was in his teenage son's bedroom under the bed in a box, while both Davis and his wife testified that it was his wife who told the detectives where the handgun was located. No narcotics were found during the search.

Thereafter, on October 15, 2015, a Jefferson County grand jury indicted Davis for possession of a handgun by a convicted felon. Additionally, on February 8, 2017, a Jefferson County grand jury indicted Davis for being a persistent felony offender in the first degree.

Beginning on January 9, 2018, the trial court held a three-day trial. At the trial, Davis testified that he did not know that there was a gun in his home and that it was his wife who had told the detectives about the gun. Davis's wife also testified at trial that Davis was unaware of the gun and that the handgun was among several items belonging to their son. Davis's son was unable to testify, as he had passed away prior to the trial.

Alternatively, the detectives testified at trial that it was Davis who had told them where the weapon was located and had led them to where the handgun was ultimately found in the home.

The jury ultimately determined Davis to be guilty of possession of a handgun by a convicted felon. Penalty proceedings then began, with the trial court bifurcating the evidence and deliberations regarding Davis's PFO status from the proceedings involving the assessment of penalty. During the sentencing phase of trial, the jury learned of Davis's lengthy criminal record, which included a conviction of wanton endangerment in the first degree (police officer) in November of 1994, and two counts of trafficking in a controlled substance in the first degree (cocaine) in December of 1994 and February of 1995. Davis was sentenced to eleven years' imprisonment for those convictions but received shock probation in January of 1996.

Davis's shock probation was revoked in 1998 and he was required to serve his eleven-year sentence after he was convicted of one count of possession of a controlled substance in the first degree (cocaine), as well as promoting sex performance by a minor under 16 years old, promoting sex performance by a minor under 18 years old, promoting prostitution in the first degree, rape in the third degree, and sodomy in the third degree.

The jury ultimately convicted Davis of being a PFO in the first degree. Further, the jury recommended a sentence of five years' imprisonment on the charge of possession of a handgun by a convicted felon enhanced to seventeen years by Davis's status as a persistent felony offender. The verdicts reflecting the jury's decisions were entered on January 23, 2018. In its order upon jury verdict, the trial court ordered a pre-sentencing investigation, scheduled a sentencing hearing for March 8, 2018, and placed Davis on the home incarceration program ("HIP") in the interim.

Thereafter, Davis failed to report to both the HIP office and to Probation and Parole to complete his pre-sentencing investigation report. The trial court issued a bench warrant for Davis on January 24, 2018.

The warrant was not executed until September of 2018, and Davis's sentencing hearing was thereafter continued on multiple occasions upon Davis's request. Davis subsequently obtained different counsel and his sentencing was scheduled for April 22, 2019. On April 20, 2019 – prior to any final judgment and sentencing order entered by the trial court – Davis filed a motion for a new trial pursuant to Kentucky Rule of Civil Procedure ("CR") 60.02, CR 60.03, and Kentucky Rule of Criminal Procedure ("RCr") 10.06. Davis also included claims of ineffective assistance of counsel in his motion.

The Commonwealth argued that Davis's motion was procedurally improper, as RCr 10.06 required that a motion for a new trial be served no more than five days after a verdict. Further, the Commonwealth argued that no basis in law existed for Davis's argument that his failure to file the motion in a timely manner should be excused based on the alleged ineffective assistance of counsel. Finally, the Commonwealth argued that Davis's motion under CR 60.02 was also procedurally improper, as CR 60.02 did not authorize relief from a final judgment which had not yet been rendered. Therefore, the Commonwealth argued that Davis was seeking relief akin to an interlocutory appeal of the jury's verdict, and CR 60.02 was limited to post-judgment motions in criminal cases.

At Davis's sentencing hearing on June 17, 2019, the trial court orally denied Davis's motion and sentenced Davis to a total of twelve years' imprisonment. The trial court entered a written judgment of conviction and sentence on June 24, 2019.

On June 26, 2019, Davis filed a timely motion for findings of fact and conclusions of law and a motion to alter, amend, or vacate pursuant to CR 52 and CR 59.01. Davis also filed a notice of appeal with this Court from the trial court's judgment of conviction and sentence on July 17, 2019. The trial court entered an order on July 26, 2019 denying Davis's motion pursuant to CR 52 and 59.

Further facts will be developed as required to address the specific issues presented herein.

## ISSUES

On appeal, Davis argues that the trial court erred by giving incorrect jury instructions regarding constructive possession, failing to grant a *Batson*[1] challenge, denying Davis's request to present evidence regarding his son's murder, bifurcating the sentencing phase of Davis's trial, giving incorrect jury instructions regarding the PFO enhancement, failing to give an instruction on PFO status in the second degree, and permitting inadmissible evidence to be presented during the sentencing phase. Finally, Davis contends that he received ineffective assistance of counsel.

## ANALYSIS

As a preliminary matter, we note that Davis filed a notice of appeal in this case prior to the trial court's resolution and disposition of his CR 52 and 59 motion. Because Davis's CR 52 and 59 motion was timely, it therefore tolled the time for filing a notice of appeal. *See* CR 73.02(1)(e)(i). Therefore, Davis's notice of appeal became effective as of the date of the trial court's decision disposing of his motion, and this appeal is properly before us. *Id*.

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct.1712, 90 L. Ed. 2d 69 (1986).

### a. Jury Instructions

The Commonwealth pursued a theory of constructive possession against Davis regarding the charge of possession of a handgun by a convicted felon, and Davis countered that he had no knowledge of or intent to possess the gun, either through himself or others. Davis first argues that the jury instructions regarding possession of a handgun by a convicted felon failed to require the requisite *mens rea*, as the definition of "possession" contained in the instructions did not include the words "knowingly has the power and intention."

Davis acknowledges, and we find, that this alleged error was not properly preserved for appellate review by contemporaneous objection pursuant to RCr 9.22. Thus, our review will proceed under the standard contained in RCr 10.26, which requires a showing of "palpable error which affects the substantial rights of a party" and which results in "manifest injustice[.]"

As discussed by the Kentucky Supreme Court, "[f]or an error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation marks and citations omitted). The rule's requirement of manifest injustice requires "showing [a] probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). Stated differently, a palpable error is where "the defect in

the proceeding was shocking or jurisprudentially intolerable." *Id*. at 4. Ultimately, "[m]anifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding." *McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky. 2012).

The instructions regarding constructive possession given by the trial court in this case are as follows:

**INSTRUCTION NO. 1: POSSESSION OF A HANDGUN BY A CONVICTED FELON**

The defendant, Andrea Davis, has stipulated to the fact that prior to January 27, 2015, he had been convicted of a felony. You will find the defendant, Andrea Davis, guilty of Possession of a Handgun by a Convicted Felon, under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in Jefferson County, Kentucky, on or about January 27, 2015, he knowingly had in his possession a firearm;

AND

B. That the firearm was a handgun as defined under instruction No. 2[.]

. . . .

**INSTRUCTION NO. 2: DEFINITIONS**

A. **Knowingly** – A person acts knowingly with respect to conduct or to a circumstance when he is aware that his conduct is of that nature or that the circumstance exists.

. . . .

-8-

B. **Possession** – means to have actual possession or otherwise to exercise actual dominion or control over a tangible object either directly or through others.

The crime with which Davis was charged is described in Kentucky Revised Statutes ("KRS") 527.040, which states in applicable part that "[a] person is guilty of possession of a firearm by a convicted felon when he possesses, manufactures, or transports a firearm when he has been convicted of a felony[.]" KRS 500.080(14), which includes the definitions for the penal code, defines "possession" to mean having "actual physical possession or otherwise to exercise actual dominion or control over a tangible object[.]"

Davis argues that the jury instructions stated above did not accurately recite the definition of constructive possession contained in *Johnson v. Commonwealth*, 90 S.W.3d 39 (Ky. 2002), *as modified* (Jan. 13, 2003), *overruled on other grounds by McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010). Specifically, the *Johnson* Court stated that possession can be found when a defendant has actual possession or "knowingly has the power and intention at a given time to exercise dominion and control of an object, either directly or through others." *Id*. at 42 (internal quotation marks and citation omitted). In failing to require the exact language of *Johnson*, Davis argues that the trial court omitted the *mens rea* required to support a constructive possession theory.

We first note that the holding in *Johnson* did not involve jury instructions. Nor do we need to discuss Davis's citations to KRS 502.020, as that statute addresses complicity, with which Davis was not charged. Turning to the language contained in the jury instructions, "[i]t bears emphasis that jury instructions are reviewed as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." *Smith v. Commonwealth*, 370 S.W.3d 871, 880 (Ky. 2012) (internal quotation marks and citations omitted). Here, we believe the instructions properly informed the jury of the elements necessary to convict Davis of possession of a handgun by a convicted felon, including the relevant intent requirements. The instructions provided that Davis could be convicted of the crime only if he "*knowingly had in his possession* a . . . handgun[.]" (Emphasis added.) Because the jury was instructed to find guilt only if Davis "knowingly" possessed the handgun, the requisite *mens rea* for constructive possession was sufficiently addressed.

Moreover, we agree with the Commonwealth that its closing arguments during the trial sufficiently apprised the jury of the applicable *mens rea* element, including the statements that "it's constructive possession if you know you have a thing in your home" and "that's why he was charged, because he

-10-

knowingly possessed a handgun[.]"  Therefore, we can discern no "plain, obvious and readily noticeable" error.  *See Brewer*, 206 S.W.3d at 349 (citation omitted).

### b.  *Batson* **Challenge**

Davis next argues that the trial court erred in failing to grant his *Batson* challenge.  In *Batson v. Kentucky*, the United States Supreme Court held that peremptory challenges based solely on a juror's race "or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant" violated the Equal Protection Clause.  476 U.S. 79, 89, 106 S. Ct.1712, 1719, 90 L. Ed. 2d 69 (1986).  Therefore, under *Batson*, a three-step process is required for evaluating such claims:

> First, the defendant must make a prima facie showing of racial bias for the peremptory challenge.  Second, … the burden shifts to the Commonwealth to articulate "clear and reasonably specific" race-neutral reasons for its use of a peremptory challenge. . . .  Finally, the trial court has the duty to evaluate the credibility of the proffered reasons and determine if the defendant has established purposeful discrimination.

*Washington v. Commonwealth*, 34 S.W.3d 376, 379 (Ky. 2000) (citations omitted).

When engaging in a *Batson* analysis, "the ultimate burden of showing unlawful discrimination rests with the challenger."  *Rodgers v. Commonwealth*, 285 S.W.3d 740, 758 (Ky. 2009) (citation omitted).  Moreover, "[g]reat deference is given to the trial court's ruling on a *Batson* motion" and that ruling will not be disturbed on appeal unless clearly erroneous.  *Newcomb v. Commonwealth*, 410

-11-

S.W.3d 63, 81 (Ky. 2013) (citation omitted). When determining whether the trial court erred in applying *Batson*, we review the trial court's decision for an abuse of discretion. *Rodgers*, 285 S.W.3d at 757. An abuse of discretion occurs when a trial court's determination is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

In this case, during *voir dire*, Davis made a *Batson* challenge when the Commonwealth struck one juror, an African American man. The Commonwealth's explanation for striking the juror was as follows:

> When [Davis's trial counsel] was talking about the penalty and the penalty range, things of that nature, in response to one of his first questions he turned to the juror next to him. He kind of laughed and then he did a motion. I guess they can't really see me right now, but he sort of did like a close your mouth, lock away, throw away the key and kind of laughed like he wasn't going to respond or be attentive to that question.
>
> He also wasn't responsive throughout and that to me gave an indication that he wasn't going to answer that and so that was the reason for striking the juror.

Davis's attorney responded that he saw none of the foregoing transpire and the juror could merely have been speaking to another juror about an unrelated matter. The trial court stated that it would take the Commonwealth "at their word," found that the Commonwealth's exercise of its peremptory challenge was race-neutral, and denied Davis's *Batson* challenge.

Turning to the three-step test used to evaluate a *Batson* challenge, because the Commonwealth in this case offered an explanation for the peremptory strike, we need not determine whether Davis satisfied the first step of the *Batson* test. *See Newcomb*, 410 S.W.3d at 81-82.

As to the second step, "[t]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race[-]neutral." *Mash v. Commonwealth*, 376 S.W.3d 548, 555 (Ky. 2012) (citation omitted). In this case, the Commonwealth's explanation concerning the juror's reaction to certain questioning and general unresponsiveness met "the facial validity requirement under *Batson* because it could apply to a juror of any race." *Newcomb*, 410 S.W.3d at 82.

Finally, as to *Batson*'s third step, "[t]he trial court may accept at face value the explanation given by the prosecutor depending upon the demeanor and credibility of the prosecutor." *Commonwealth v. Snodgrass*, 831 S.W.2d 176, 179 (Ky. 1992) (citation omitted). Stated another way, the trial court is "entitled to believe the prosecutor's explanation based on [its] evaluation of the prosecutor's credibility and demeanor." *Harris v. Commonwealth*, 134 S.W.3d 603, 612 (Ky. 2004) (citation omitted). "At this step of the analysis, appellate courts should defer to the trial court absent exceptional circumstances." *Newcomb*, 410 S.W.3d at 83

(citation omitted).  Indeed, "[b]ecause the trial court's decision on this point requires it to assess the credibility and demeanor of the attorneys before it, the trial court's ultimate decision on a *Batson* challenge is like a finding of fact that must be given great deference by an appellate court." *Commonwealth v. Coker*, 241 S.W.3d 305, 308 (Ky. 2007) (citations omitted).  Here, the trial court acted within – and did not abuse – its discretion in finding that the Commonwealth's race-neutral explanation for striking the juror was not purposeful discrimination, and such finding was not clearly erroneous.  We find no error.

### c.  Exclusion of Alternate Perpetrator Evidence

Davis next claims that the trial court improperly excluded evidence concerning an alternate perpetrator in this case.  Specifically, Davis sought to introduce at trial evidence that his son was killed in an act of gun violence after Davis was charged in this case, arguing that it was relevant to clarify why his son could not testify that the gun was not Davis's but rather his son's.  The trial court held that the evidence was inappropriate because it was irrelevant and overly prejudicial, as it would only serve to build sympathy for Davis.

It is well-settled in Kentucky that "[r]ulings upon admissibility of evidence are within the discretion of the trial judge; such rulings should not be reversed on appeal in the absence of a clear abuse of discretion." *Simpson v. Commonwealth*, 889 S.W.2d 781, 783 (Ky. 1994).

Here, the trial court determined that the evidence regarding the circumstances surrounding the death of Davis's son was irrelevant and prejudicial. Under Kentucky Rule of Evidence (KRE) 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Nevertheless, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice[.]" KRE 403. As stated by the Kentucky Supreme Court, "[e]vidence that appeals to the jury's sympathies . . . or otherwise may cause a jury to base its decision on something other than the established propositions in the case is unfairly prejudicial." *Thorpe v. Commonwealth*, 295 S.W.3d 458, 462 (Ky. App. 2009) (internal quotation marks and citation omitted). "Whether evidence falls on the side of probative or prejudicial is a matter reserved to the discretion of a trial court." *Id*.

In this case, we do not believe that the trial court abused its discretion in ruling that evidence concerning Davis's son was prejudicial. As previously discussed, the Commonwealth's theory was one of constructive possession. Davis's knowledge of the gun was the ultimate issue, and the fact that Davis's son was later the victim of gun violence did not make Davis's knowledge of the gun more or less probable. Rather, it served to "appeal[] to the jury's sympathies." *Id*.

-15-

Further, Davis was not precluded from presenting an alternate perpetrator defense. Davis's wife testified that the gun belonged to their son and that Davis did not know it was in the home. The trial court conducted the appropriate balancing test under KRE 403, and we find no abuse of discretion.

### d. Bifurcation of PFO and Truth-in-Sentencing

Davis next argues that the trial court erred when it held the PFO guilt phase separately from the sentencing phase in contravention of KRS 532.055. "[S]entencing issues may be raised for the first time on appeal[.]" *Cummings v. Commonwealth*, 226 S.W.3d 62, 66 (Ky. 2007). Indeed, because "sentencing is jurisdictional it cannot be waived by failure to object." *Wellman v. Commonwealth*, 694 S.W.2d 696, 698 (Ky. 1985).

As previously discussed, in this case, after the guilt or innocence phase concerning the charge of possession of a handgun by a convicted felon, the trial court conducted two phases of sentencing – the first phase, in which the jury was instructed to determine whether Davis was a PFO – and then a second phase in which the jury was instructed to assign a penalty. Although they were not conducted simultaneously, the penalty phase was held within minutes of the conclusion of the PFO hearing.

KRS 532.055 addresses "sentencing by jury in felony cases[,]" and subsection three of the statute states that "[a]ll hearings held pursuant to this

-16-

section shall be combined with any hearing provided for by KRS 532.080[,]" or the PFO statute. Here, the Commonwealth concedes the PFO guilt phase should have been combined with the penalty phase but argues that any error was harmless under RCr 9.24.

In *Commonwealth v. Reneer*, 734 S.W.2d 794 (Ky. 1987), the Kentucky Supreme Court held that the combined format described in KRS 532.055 was not unconstitutional "because the same evidence that is pertinent toward fixing the penalty is also pertinent for consideration in the enhancement of [the] sentence[.]" *Id*. at 798. However, the dissenting justices in *Reneer* discussed at length their concern regarding the possible prejudice that defendants may face from the combined hearing format described in KRS 532.055. *Id*. at 803-04 (Leibson, J., dissenting).[2]

Here, we agree with the Commonwealth that any error committed by the trial court regarding KRS 532.055 was harmless under RCr 9.24. Indeed, as our courts have previously suggested by stating that combined hearings create "apparent difficulties" and "much confusion," it would not appear that the error "affect[ed] the substantial rights" of Davis. *Lemon v. Commonwealth*, 760 S.W.2d 94, 95 (Ky. App. 1988).

---

[2] Lambert, J., joined in the dissenting opinion.

### e. PFO Jury Instructions

Davis next argues that the PFO in the first degree jury instructions allowed for a non-unanimous verdict because the instructions did not require that the jury be unanimous as to which prior convictions upon which they were basing their verdict of guilt. Davis also claims that the jury could possibly have premised their finding of guilt as to his PFO status upon convictions that were invalid because they were too old. Finally, Davis argues that the jury should have been instructed on PFO status in the second degree. These alleged errors were not preserved for appellate review, and this Court will again engage in a palpable error review.

The applicable jury instruction stated as follows:

**INSTRUCTION NO. 1: PERSISTENT FELONY OFFENDER FIRST DEGREE**

You will find the defendant, Andrea Davis, guilty of Persistent Felony Offender First Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That prior to January 27, 2015, the Defendant was convicted of at least two of the following:

- Promoting a Sexual Performance by a Minor under 16, Promoting a Sexual Performance by a Minor under 18, Promoting Prostitution in the First Degree, Rape in the Third Degree, and Sodomy in the Third Degree by final Judgment of the Jefferson Circuit Court on the 23rd day of November 1998 and/or,

- The Defendant was convicted of Possession of a Controlled Substance First Degree by final Judgment of the Jefferson Circuit Court on the 17th day of September 1998 and/or,

- The Defendant was convicted of Trafficking in a Controlled Substance First Degree (2 counts), Wanton Endangerment First Degree, Trafficking in Marijuana over 8 oz. while in possession of a firearm, and Possession of drug Paraphernalia While In Possession of a Firearm, all felonies, by final Judgment of the Jefferson Circuit Court on the 2nd day of October 1995

AND

B. That he was eighteen years of age or older when he committed all of the offenses of which you believe he was so convicted;

[AND]

C. That pursuant to those convictions, he was sentenced to a term of imprisonment of one year or more for each conviction and completed the service of the sentence no more than five years before January 27, 2015

OR

That he was discharged from parole or probation from the sentence imposed on him pursuant to at least one such prior conviction no more than five years before January 27, 2015

OR

That he was on probation, parole, conditional discharge, conditional release, or furlough or appeal bond, from at least one such prior conviction at the time he committed

-19-

the offense of which you have found him guilty in this case;

AND

[D.] That he is now twenty-one years of age or older.

In *Springfield v. Commonwealth*, the defendant made an argument very similar to the argument made by Davis – specifically, that the jury had a right to disbelieve some – but not all – of the Commonwealth's evidence concerning the defendant being a PFO. The Kentucky Supreme Court stated, however, that:

> [w]hen it comes to the presentation of proof for PFO status, the jury must take the Commonwealth's proof all-or-nothing *in the absence of some evidence bringing one or both prior convictions into dispute*. That is to say, the jury cannot accept part as true and question the rest *unless there is an evidentiary basis for disregarding a prior conviction*.

410 S.W.3d 589, 597 (Ky. 2013) (emphasis added) (internal quotation marks and citation omitted).

Here, Davis provided no evidentiary basis for the jury to question the Commonwealth's evidence regarding Davis's prior convictions, and such evidence went unchallenged at trial. Thus, because the jury must have accepted all three convictions as true to reach a guilty verdict, the jury must have agreed on which offenses served as the basis of the PFO conviction. Because the jury was not at liberty to believe some but not all of the Commonwealth's evidence regarding Davis's prior convictions, and such evidence was not challenged at trial, there was

-20-

no basis for the giving of an instruction on PFO in the second degree. Further, as in *Springfield*, "the PFO instruction given to the jury was actually in [Davis's] favor, given that by instructing the jury on first-degree PFO only, the jury would have to [acquit] him of PFO altogether if it believed that he had only one prior conviction." *Id*. We see no error, palpable or otherwise.

### f. Alleged Inadmissible Evidence

Davis next argues that the Commonwealth offered inadmissible evidence regarding certain alleged aliases used by Davis and obtained from the National Crime Information Center ("NCIC") database and CourtNet. Davis preserved this claim by contemporaneous objection during the trial. The standard of review for admission of evidence is whether the trial court abused its discretion. *English*, 993 S.W.2d at 945.

Davis bolsters his claim of error by discussing the case *Finnell v. Commonwealth*, 295 S.W.3d 829 (Ky. 2009). We find the *Finnell* case to be distinguishable from the case *sub judice*. The *Finnell* Court held that the use of CourtNet as the *sole* means by which to introduce evidence of a defendant's prior convictions was reversible error. *Id*. at 835. Rather, "the evidence of prior convictions must come from the official court record, or certified copies thereof." *Id*.

In this case, the Commonwealth did introduce certified copies of Davis's prior convictions. Here, while the information gleaned from CourtNet and NCIC was utilized to discuss Davis's possible aliases, we do not believe that the inclusion of this information rose to the level of an abuse of discretion, as the jury received information concerning Davis's prior convictions "based on properly authenticated records of prior convictions." *Id*. We affirm as to this issue.

### g. **Ineffective Assistance of Counsel**

Davis last argues his entitlement to numerous claims of ineffective assistance of counsel. We agree with the Commonwealth that such claims are premature. As discussed by the Kentucky Supreme Court, "claims of ineffective assistance of counsel are best suited to collateral attack proceedings, after the direct appeal is over, and in the trial court where a proper record can be made." *Humphrey v. Commonwealth*, 962 S.W.2d 870, 872 (Ky. 1998). Moreover, "[a]s a general rule, a claim of ineffective assistance of counsel will not be reviewed on direct appeal from the trial court's judgment, because there is usually no record or trial court ruling on which such a claim can be properly considered." *Id*. An appellate court may review an ineffective assistance of counsel claim on direct appeal only if there is a trial record or an evidentiary hearing is held on a motion for a new trial and the trial court rules on the issue. *Id*. at 872-73.

Such is not the case here. Nevertheless, Davis is not prohibited from raising his claims in a properly presented RCr 11.42 motion, for while such claims may not be considered in this direct appeal, "this does not preclude their consideration in a proper collateral attack proceeding." *Id*. at 872 (citation omitted). Thus, we decline to review Davis's ineffective assistance of counsel claims as procedurally improper at this time.

## **CONCLUSION**

For the foregoing reasons, we affirm the Jefferson Circuit Court.


ALL CONCUR.


| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| F. Todd Lewis<br>Louisville, Kentucky | Daniel Cameron<br>Attorney General of Kentucky |
| | Aspen Roberts<br>Assistant Attorney General<br>Frankfort, Kentucky |