RENDERED:  JULY 30, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1705-MR
AND
NO. 2020-CA-0719-MR

AUSTIN CHANNING MCGRAW                                              APPELLANT

APPEALS FROM CARTER CIRCUIT COURT
v.        HONORABLE REBECCA K. PHILLIPS, JUDGE
ACTION NO. 18-CR-00134

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, KRAMER, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Austin Channing McGraw ("Appellant") appeals from

a judgment of the Carter Circuit Court reflecting a jury verdict of guilty on one

count each of sodomy in the first degree and sexual abuse in the first degree.[1]

---

[1] Kentucky Revised Statutes ("KRS") 510.070 and KRS 510.110.

Appellant also prosecutes a separate appeal, which is consolidated herein, from an opinion and order denying his motion for a new trial. Appellant raises several claims of error including the improper admission of incriminating statements, the improper failure to grant a mistrial, and the impaneling of a compromised jury. For the reasons addressed below, we find no error and affirm the judgment on appeal. We also affirm the trial court's denial of Appellant's motion for a new trial.

## FACTS AND PROCEDURAL HISTORY

On May 18, 2018, a Carter County grand jury indicted Appellant on one count each of sodomy in the first degree and sexual abuse in the first degree. The matter proceeded to a jury trial in Carter Circuit Court on July 16, 2019. At trial, it was alleged that on April 1, 2018, B.B.,[2] a 15-year-old female, went to Appellant's house to babysit Appellant's child. Appellant was then a 24-year-old man with a wife and young child. Appellant came home around midnight and drove B.B. to Taco Bell in his truck. B.B. testified that Appellant stopped at an ATM, withdrew $200, and offered it to her in exchange for a sex act. According to B.B., she refused to perform the sex act. Upon returning to Appellant's house, B.B. testified that Appellant grabbed her head and shoved it toward his crotch. B.B. again refused to perform the sex act, and testified that Appellant touched her

---

[2] We will use B.B.'s initials because she was a minor in 2018.

breasts in the truck and after entering the residence. B.B. spent the night at Appellant's residence, and awoke the next morning to find Appellant grabbing her butt. B.B. stated that she told her boyfriend, C.F., and a female friend, G.F., about what happened.

B.B. testified that about four days later, she and G.F. spent the night at Appellant's residence. She stated that she felt safe doing so because she believed Appellant would not be at home. Appellant unexpectedly was at home that night, however, and, according to B.B., he purchased alcoholic beverages and provided them to the girls. B.B. drank to the point of intoxication.

According to B.B., after she was intoxicated, Appellant took her into another room ostensibly to perform what he called a field sobriety test.[3] B.B. testified that Appellant tried to pull her pants down and put his penis in her vagina. She said he also took her hand and tried to make her touch his penis, which she refused. B.B. laid down on a weight bench and passed out from apparent alcohol intoxication. When she awoke, Appellant allegedly had put his penis in her mouth and his fingers in her vagina.

G.F. also testified and stated that B.B. told her about the April 2 incident. She also testified that Appellant provided alcohol to the girls and that B.B. was highly intoxicated. G.F. further testified that Appellant repeatedly took

_____

[3] Appellant was a correctional officer at Little Sandy Correctional Complex.

B.B. into the back room to perform what he called sobriety tests on her. G.F. was concerned about Appellant's behavior and at one point secretly used her phone to record a short video of B.B. and Appellant. G.F. contacted B.B.'s boyfriend, C.F., and either G.F. or C.F. told B.B.'s mother who called the police.

A Kentucky State Police investigation followed. Detective Sam Lawson interviewed B.B., G.F., and B.B.'s mother that night, and interviewed Appellant at Appellant's residence on April 6.

Appellant testified at trial and denied any wrongdoing. While acknowledging that he was alone with B.B. in the truck on the way to Taco Bell, Appellant denied withdrawing $200 from the ATM, and stated that he did not buy alcohol nor provide any alcohol to B.B. Though he did not deny taking B.B. into the room with the weight bench, he asserted that B.B. was very impressionable and was making false allegations to get back at her boyfriend. Detective Lawson also testified.

The matter went before the jury, which returned a verdict of guilty on both counts. Appellant was sentenced to terms of 18 years and 5 years on the two counts, to be served concurrently for a total sentence of 18 years in prison.

Appellant's motion for a new trial was denied, and this consolidated appeal followed.[4]

## ARGUMENTS AND ANALYSIS

Appellant, through counsel, first argues that he was prejudiced by the introduction of multiple incriminating statements he allegedly made which were never disclosed to the defense in conformity with the Kentucky Rules of Criminal Procedure ("RCr") and the circuit court's trial order. Appellant asserts that on June 6, 2018, the circuit court ordered the Commonwealth to produce "any oral incriminating statement known by the attorney for the Commonwealth to have been made by the Defendant to any witness." According to Appellant, the Commonwealth responded to the discovery order on June 6, 2018, and June 7, 2018, by providing six incriminating statements on April 2, 2018, purportedly made by Appellant and to which B.B. was prepared to testify.

At trial, B.B. testified that on April 2, 2018, and while driving down the road, Appellant stated that no one would find out if she performed the sex act, that it would all be okay, and that B.B. should just do it. She further testified that while sitting in the truck in the driveway, Appellant pulled B.B.'s head toward his

---

[4] On June 1, 2020, Appellant filed a notice of appeal (No. 2020-CA-0719-MR) from the May 4, 2020 order denying his motion for a new trial. Appellant now states at footnote 23 of his written argument that he "has elected to not pursue the appeal of the order entered on May 4, 2020." Appellant has not moved to dismiss No. 2020-CA-0719-MR, and it remains on the active docket. As such, we will briefly address it herein.

crotch and said "just do it." According to B.B., Appellant also playfully told her to hurry up and get out of the shower, and that the more she resisted the hotter it was. B.B. testified that sometime later, Appellant said he was sorry and would never do it again, and asked her to promise that she would not tell anyone.

Appellant argues that these statements were never disclosed to the defense before trial, that the failure to disclose the statements violated the court's disclosure order, and that the resultant improper introduction of the statements prejudiced the proceeding against Appellant. He notes that there was no direct evidence in this case, whether DNA, a rape kit, hair or body fluid samples, eyewitnesses, or a confession. As such, Appellant maintains that this is a classic "he said, she said" scenario where the entirety of the Commonwealth's case was based on the testimony of the accuser. Since, according to Appellant, the Commonwealth grossly violated the disclosure order by introducing Appellant's incriminating statements without proper notice to the defense, Appellant was deprived of a fair trial and is entitled to an opinion reversing the judgment on appeal.

In response, the Commonwealth argues that Appellant did not preserve this argument for appellate review. It notes that Appellant did not make any objection to B.B.'s testimony at trial, and never argued before the trial court that the statements in question were not disclosed. The Commonwealth directs our

attention to RCr 7.24(11), which provides that if it is brought to the court's attention that a party has failed to comply with this rule or order, the court may allow for certain remedies including the aggrieved party's inspection of the undisclosed materials, a continuance, or the prohibition of the undisclosed material's entry into evidence. The Commonwealth also argues that when questioned about inconsistencies between her trial testimony and what she told Detective Lawson, B.B. either did not tell Lawson those things or did not recall if she did. As such, the Commonwealth asserts that Appellant has not shown that it was in possession of this information prior to B.B.'s trial testimony and therefore did not wrongfully fail to disclose it. It also argues that even if B.B. testified as to Appellant's incriminating statements which were not disclosed, no manifest injustice occurred and reversal is not warranted.

Appellant has not complied with Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v), which requires that the appellant state at the beginning of the written argument if the issue was preserved and, if so, in what manner.[5] We are not required to consider portions of Appellant's brief not in conformity with CR 76.12, and may summarily affirm the trial court on the issues contained therein.

---

[5] Appellant contends that this issue is preserved by the trial court's discovery order. "[E]rrors to be considered for appellate review must be precisely preserved and identified in the lower court." *Skaggs v. Assad, by and through Assad*, 712 S.W.2d 947, 950 (Ky. 1986) (citation omitted). Appellant never asked the Carter Circuit Court to consider the issue of whether the Commonwealth failed to disclose all incriminating statements made by Appellant. As such, this issue is not preserved for appellate review.

*Pierson v. Coffey*, 706 S.W.2d 409, 413 (Ky. App. 1985). "In *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990), we established the principle that, where an appellant fails to comply with CR 76.12(4)(c)(iv), a reviewing court need only undertake an overall review of the record for manifest injustice. We believe that principle applies as well to the failure to comply with CR 76.12(4)(c)(v)." *J.M. v. Commonwealth, Cabinet For Health and Family Services*, 325 S.W.3d 901, 902 n.2 (Ky. App. 2010). As in *J.M.*, we have chosen the less severe alternative of reviewing the proceeding below for manifest injustice rather than summarily affirming the decision of the trial court. "Manifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding." *Kingrey v. Commonwealth*, 396 S.W.3d 824, 831 (Ky. 2013) (footnote, citation, and quotation marks omitted).

The question for our consideration, then, is whether the Commonwealth's alleged failure to disclose all of Appellant's incriminating statements seriously affected the fairness, integrity, or public reputation of the proceeding. *Kingrey, supra*. We must answer this question in the negative. As to inconsistencies between what she told Detective Lawson and her trial testimony, B.B. stated that she either did not say those things to Lawson or did not remember saying them. This statement reasonably supports the Commonwealth's contention that it was not in possession of this information prior to trial. Further, the

Commonwealth disclosed that B.B. was prepared to testify that Appellant asked her to perform a sex act, that Appellant offered her $200 to perform a sex act, that he exposed himself to her and told her to perform the act, that he asked her not to tell anyone what happened, and that she would ruin his life if she told anyone. These disclosures broadly encompass the entirety of B.B.'s allegations and reasonably informed the defense as to the nature and scope of B.B.'s testimony. In addition, an incriminating statement must be incriminating at the time it was made, not merely in the context of testimony presented at trial. *Thorpe v. Commonwealth*, 295 S.W.3d 458, 461 (Ky. App. 2009) (citation omitted). B.B.'s testimony that Appellant playfully knocked on the bathroom door and told her to hurry up, or whether he offered or she asked for Taco Bell, are not in themselves incriminating outside the context of the testimony presented at trial.

Because the Commonwealth 1) apparently was not aware in advance of many things to which B.B. testified at trial, and 2) reasonably informed Appellant as to the nature and scope of B.B.'s testimony, including her claims as to several incriminating statements made by Appellant, we find no error seriously affected the fairness, integrity, or public reputation of the proceeding. *Kingrey*, *supra*. As such, we find no manifest injustice.

Appellant next argues that the circuit court erred in failing to grant a mistrial when the Commonwealth commented on Appellant's invocation of his

right against self-incrimination. Specifically, the jury was shown a video of Detective Lawson interviewing Appellant, wherein Lawson stated to Appellant that, "you didn't want to talk about it anymore you were afraid you were going to incriminate yourself?" Appellant, through counsel, objected to the video. After considering the matter outside the hearing of the jury, the court admonished the jury to disregard the offending question and not to consider any inferences arising therefrom. The court told the jury that any inference that Appellant terminated the interview was inaccurate. Appellant now argues that a mere admonition was not sufficient and the circuit court erred in failing to so rule.

It is noteworthy that the offending language took the form of a question to Appellant rather than a statement by Detective Lawson. That is to say, Lawson asked if Appellant was afraid he was going to incriminate himself. Lawson did not state that Appellant was afraid he was going to incriminate himself. Further, Appellant did not invoke his right to remain silent, but rather continued to talk – albeit not about the question he was being asked.

We may presume that an admonition to disregard evidence is effective, and that "the admonition cures any error." *Hoppenjans v. Commonwealth*, 299 S.W.3d 290, 292 (Ky. App. 2009) (citation omitted). An admonition is not curative when 1) there is an "overwhelming probability" that the jury will be unable to follow the admonition, coupled with a strong likelihood that

-10-

the evidence would be devastating to the defendant, or 2) where the question was asked without a factual basis and was inflammatory or highly prejudicial. *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003). We conclude that neither of the *Johnson* exceptions applies herein; therefore, we hold that the admonition was effective and cured the error.

Appellant goes on to argue that he was prejudiced by the impaneling of a compromised jury. Specifically, he asserts that three jury pool members were biased. One pool member acknowledged that her husband had been a victim of sodomy as a child. A second pool member stated that her first cousin's daughter was sexually abused by her stepfather. A third potential juror said that his wife's nieces allegedly were molested by a family member. Appellant used peremptory strikes to remove two of the individuals and the third person sat on the jury. He argues that the circuit court erred in failing to strike all three jurors for cause.

Appellant acknowledges that this issue is not preserved for appellate review. He argues, however, that the failure to strike the jurors for cause constitutes palpable error sufficient to require reversal. "A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." RCr 10.26. "When an appellate court engages in a

palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

The question for our consideration, then, is whether the failure to strike the three jurors for cause was a defect so manifest, fundamental, and unambiguous that it threatened the integrity of the judicial process. We find no such defect. Manifest injustice has been found, for example, when the Commonwealth and the trial judge agreed to "send a message" by sentencing a defendant far in excess of the statutory maximum penalty. *Martin v. Commonwealth*, 456 S.W.3d 1, 12 (Ky. 2015). Manifest injustice has also been found when identical jury instructions for separate offenses potentially deprived the defendant of his right to a unanimous verdict and to challenge the sufficiency of the evidence on appeal. *Miller v. Commonwealth*, 283 S.W.3d 690, 696 (Ky. 2009). The decision of the Carter Circuit Court not to strike these three potential jurors for cause did not threaten the integrity of the judicial process as in *Martin* and *Miller*. All three jurors stated that they could be fair and impartial; therefore, we find no basis for reversing the judgment of conviction on this issue.

Appellant's fourth argument is that the trial court erred in allowing improper expert opinion testimony to be admitted. On direct examination, Detective Lawson was questioned as to why he did not use a sexual assault kit as

-12-

part of his investigation. He answered that it was likely that any DNA from the perpetrator in B.B.'s mouth would have been "overpowered" by her DNA given the length of time between the alleged crime and Lawson's investigation. Citing Kentucky Rules of Evidence ("KRE") 702, Appellant argues that this answer constituted improper expert testimony requiring scientific, technical, or other specialized knowledge. As such, Appellant contends that Lawson's answer should have been stricken.

Appellant again acknowledges that this issue is not preserved for appellate review. We do not conclude that Lawson's answer rises to the level of error seriously affecting the fairness, integrity, or public reputation of the proceeding. *Kingrey*, *supra*. As such, we find no manifest injustice requiring reversal on this issue.

Appellant goes on to argue that Lawson improperly stated his opinion that wine coolers of the type purchased by Appellant are the type of beverage typically consumed by younger females. Appellant argues that the trial court erred in failing to admonish the jury that the detective was not qualified to offer such an opinion. The trial court sustained Appellant's objection as to Lawson's statement about the type of alcohol purchased by Appellant, and defense counsel did not request an admonition. "Our precedent holds that a failure to request an admonition after an objection had been sustained means that no error occurred."

*Allen v. Commonwealth*, 286 S.W.3d 221, 225-26 (Ky. 2009) (footnote, citation, and internal quotation marks omitted).

Appellant next argues that the trial court erred in allowing the Commonwealth to make an improper opening statement. The Commonwealth's opening statement included references to child predators, with the Commonwealth referring to "some individuals who are a wolf in sheep's clothing . . . ." The Commonwealth noted that society doesn't know why these individuals prey on children, and it recited the story of Dr. Johnny Bardo who was a respected member of the community yet sexually assaulted 24 children.

Defense counsel objected more than once to the Commonwealth's opening statement. The first objection was overruled. After the second objection, the trial court agreed that the Commonwealth should tell the jury about the evidence it intended to present rather than engaging in advocacy. The focus of Appellant's argument is that the Rules of Criminal Procedure do not allow the Commonwealth to imply that the Defendant has committed multiple child molestations when such an implication is not supported by the evidence. Appellant argues that he was entitled to a mistrial because comparing Appellant to a serial child molester was improper and prejudicial.

The trial court sustained Appellant's second objection and directed the Commonwealth to "move on." Thereafter, the Commonwealth told the jury,

You're going to hear the defense argue, why would he do this? Why would this 24 year old man, corrections officer, with a wife and baby, commit these crimes? I can't answer that. What I can tell you is that on April 1, 2019, he attempted to have sex with a 15 year old girl in his vehicle alone.

"The attorney for the Commonwealth shall state to the jury the nature of the charge and the evidence upon which the Commonwealth relies to support it[.]" RCr 9.42(a). The opening statement is not evidence, and the Commonwealth is entitled to wide latitude in its content. *Wheeler v. Commonwealth*, 121 S.W.3d 173, 180 (Ky. 2003) (citation omitted). After Appellant's second objection, the trial court directed the Commonwealth to move on to the evidence and it complied. We find no error. *Arguendo*, error, if any, would be harmless as there was no substantial possibility that the outcome of the trial could have been different but for the error. *Thacker v. Commonwealth*, 194 S.W.3d 287, 291 (Ky. 2006).

Appellant's sixth argument is his contention that the trial court erred in allowing B.B. to be referred to as "the victim" throughout the trial, thus depriving Appellant of due process and his right to the presumption of innocence. Appellant does not cite to the record as to if and when such references were made. Further, this argument was not raised at trial and is not preserved for our review. The Kentucky Supreme Court has held that children subjected to sexual abuse may properly be referred to at trial as "victims" with no undue prejudice. *Whaley v. Commonwealth*, 567 S.W.3d 576, 590 (Ky. 2019). We find no manifest injustice

on this unpreserved argument, and thus no error. For the same reason, we find no error on Appellant's related argument that G.F. should not have been allowed to testify that Appellant was "scary."

Appellant's next argument is his contention that he was prejudiced by the admission of prior bad acts without notice. At trial, G.F. testified that Appellant would "mess around with us a lot," that he would frequently tickle her and "he'd graze over stuff." Though Appellant did not object to the "graze over stuff" language, the trial court conducted a bench conference and asked where the Commonwealth was going with this line of questioning because there was no notice of Appellant's alleged prior bad acts. Thereafter, the Commonwealth moved on and asked G.F. no more questions about it.

We agree with the Commonwealth that this utterance was brief, spontaneous, and was not cited by the Commonwealth as proof of Appellant's guilt on the underlying charges. Error on this issue, if any, was harmless.

Appellant next argues that the trial court erred in failing to grant a directed verdict on the sodomy charge where the Commonwealth failed to prove forcible compulsion. A person is guilty of first-degree sodomy when he engages in sexual intercourse with another person either 1) by forcible compulsion or 2) when the other person is incapable of consent due to physical helplessness or they are less than 12 years old. KRS 510.070. The indictment alleged sexual intercourse

by forcible compulsion based on B.B.'s claim that while laying on the weight bench, she awoke to find Appellant "putting his penis in my mouth." At trial, the Commonwealth unsuccessfully sought to amend the indictment to the "physical helplessness" element. Appellant argues that the Commonwealth failed to prove forcible compulsion, and as such, Appellant was entitled to a directed verdict of acquittal.

To satisfy the element of forcible compulsion, the Commonwealth must prove that there was either actual physical force or the threat of physical force. KRS 510.010(2). A threat of physical force may be either express or implied, and is satisfied if the victim was in fear of any sex offense encompassed by KRS Chapter 510 including rape, sodomy, sexual abuse, sexual misconduct, or indecent exposure. The Kentucky Supreme Court has held that an act as simple as grabbing someone's hand may satisfy the element of forcible compulsion. *Yates v. Commonwealth*, 430 S.W.3d 883, 890 (Ky. 2014). This is because forcible compulsion is always grounded on a lack of consent. *Id.* That is to say, a person who consents to contact cannot be said to have been a victim of forcible compulsion, whereas a person who does not consent may be characterized as a victim of forcible compulsion. *Id.*

Since the mere act of holding or grabbing someone's hand without her consent may, under the right circumstances, be characterized as an act of forcible

-17-

compulsion, we conclude that Appellant's act of placing his penis in B.B.'s mouth while she was asleep or unconscious may also be characterized as an act of forcible compulsion. We draw that conclusion because both acts share the element of lack of consent. Further, since B.B. testified that Appellant had previously forced her head toward his crotch, a reasonable juror could conclude that B.B. was in fear of additional acts of physical compulsion thus satisfying "threat of physical force, express or implied" language of KRS 510.010(2).

The standard of review on a motion for a directed verdict was set forth in *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991), in which the Kentucky Supreme Court stated:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

(Citations omitted.) The prosecution must produce more than a "mere scintilla of evidence" regarding the defendant's guilt. *Id.* at 188. However, "[t]he testimony

of even a single witness is sufficient to support a finding of guilt, even when other witnesses testified to the contrary if, after consideration of all of the evidence, the finder of fact assigns greater weight to that evidence." *Commonwealth v. Suttles*, 80 S.W.3d 424, 426 (Ky. 2002) (citation omitted). The Commonwealth produced more than a mere scintilla of evidence that Appellant was guilty of first-degree sodomy under KRS 510.070. We find no error on this issue.

Appellant's final argument is that the cumulative effect of the foregoing errors requires reversal. Cumulative error can serve as a basis for reversal if the multiple errors, although individually harmless, have the effect of rendering the trial fundamentally unfair. *Elery v. Commonwealth*, 368 S.W.3d 78, 100 (Ky. 2012) (citation omitted). We find no cumulative error which deprived Appellant of a fair trial. Having determined that Appellant was not deprived of a fair trial, we find no error in the Carter Circuit Court's denial of Appellant's motion for a new trial in appeal No. 2020-CA-1719-MR.

## CONCLUSION

Having closely examined the record and the law and given due consideration to the arguments of counsel, we do not find any individual or cumulative error warranting reversal of the judgment on appeal. Appellant is not entitled to a new trial. We affirm the judgment of the Carter Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Paul J. Dickman
Covington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Berry
Assistant Attorney General
Frankfort, Kentucky